Mr Justice Johnson
 

 delivered the opinion of.the Court.
 

 This suit is instituted for the recovery of a promissory note;
 

 The plea is. filed by the three last named defendants, who represent themselves as securities to Owens, and sets Out in substance, that the note was created for the purpose of enabling Owens to obtain a loan of money from the plaintiff, in-the. ordinary course of discount;. that it was offered for discount, and rejected, and after such rejection it goes on to aver, that “ it was unlawfully, usuriously* and corruptly agreed by and between the sáid plaintiffs, by their agents employed in the management and business of the said office,, and the said OWens; that they the said plaintiffs would ré-ceive and discount the said note, and that the said Owens should deceive from them therefor, notes of the bank of Ken-: tuqky, or its branches, at the nominal .value of said-notes, and for the forbearance and loan aforesaid, that Owens should. pay said note in correct money of the United States, when ,it fell due, with interest at the rate of six per centum' per annum from, &c.; the plea then avers, that in. pursuance of said
 
 corrupt and
 
 unlawful"agreement,”
 
 this
 
 note , was passed to the plaintiffs, and Kentucky notes received in loan, “ as the sole consideration thereof,” at their nominal valúe,_ and further, “'that at the time the said note was discounted, as aforesaid, the notes of thé said bank.of Kentucky arid its ■ branches were. generally, depreciated, so much so, that one hundred dollars thereof, nominally, were of.the vafue.of fifty-four dollars .only, or less; and current only at that depreciation for greater or smaller sums,” &c.; and the defen-', dants further aver,. “ that the said transaction and déaling ..was contrary to law, and the fundamental articles of the said ■corporation; and the said note,' founded, upon a corrupt and usurious consideration, the said plaintiffs reserving, a greater.
 
 *536
 
 interest than at the rate of six per centum per annum, upon the valué of the notes loáned by them, as aforesaid.”
 

 To this plea the plaintiffs demurred, and thrée points, are made on which the court below Certify a difference of opinion to this Court. ,
 

 The 1st is, Whether the facts set forth, and the averments in. said plea make out a case on-which the corporation has taken more than at the rate of six per céntum per. annum, upon a load or discoúnt, contrary to, and in violation of the ninth rule of the fundamental articles of the constitution-of the corporation.
 

 The proposition here presented to the Court, has relation altogether to the violation of the ninth fundamental rule of the act of incorporation, and it.brings under consideration the sufficiency both of the facts and averment contained in the. plea,' to make .out ¿ violation of that article.
 

 I háve, myself, entertained very serious doubts of the suffix ■cieiiey of the averments in the plea; for it is npt a case of a direct reservation of a higher interest than the. law allows, since, on the face of the note,only six. per cent, is reserved;but the facts áre calculated to present one of those cases in which a device is resorted to* by which is reserved a higher profit than the legal interest,, under a. mask thrown over the transaction ; to wit, by taking a note payable in-gold, or, silver, for a loan of depreciated paper; a return, in fact, in specie, for an article of scarcely half the value of specie; a Iban of adulterated .dollars, for which a note is taken, payable dollar for dollar, in coin of the United States;
 

 That the law will not tolerate- such transactions has. long been settled, for a^fraud upon a statute is a violation of the statute.
 

 But the difficulty with me was this, that the plea neither avers ah intentioh to evade the statute, nor a knowledge in the plaintiffs of the actual depreciation of Kentucky money. I am con tent,however, to unite with the three of my brethren,* who. make up the majority on this point, in holding the aver1 merits to be sufficient; because* in a considerable .dearth of authorities on this subject, I find it décideu in the case of Bolton vs. Durham, in
 
 Croke's Reports, Cro. Eliz.
 
 642, that
 
 *537
 
 the. confession of the quo animo, implied in a demurrer, will affect a case with usury,, when a very similar case, in the same book, in. which the plaintiff had traversed the .plea, was left to the -jury, with a favourable charge. Benningfield
 
 vs.
 
 Ashley,
 
 Cro. Eliz.
 
 741.
 

 In the present instance, the. loan; the unconditional return of the sum lent; the illegality, and even corruption- of the bargain ; are all distinctly averred, and more than once reiterated. If the transaction tvás corrupt, and in violation, of the fundamental' laws of -the Charter, as averred in the plea, and admitted by the demurrer; it could only have been upon the grojlnd of. an intention to evade the-statute, and with a knowledge of.the reduced value ofthe-'Kentucky bills.
 

 And it is not unnatural here to remark, that the plea sets out a refusal to-make a loan in. the ordinary course, to wit, in gold cftsilver, or the plaintiffs’own nptes; and a'subsequent agreement-to. make the loan, provided payment wouid be received in this depreciated paper. This state of facts presents an obvious, analogy, to the leading case of. Lowe
 
 vs.
 
 Waller,
 
 Douglas,
 
 736, in which the negotiation commenced for a loan pfjnonéy,, but terminated in a sale of goods, ori the re-salé of which, the borrower, (as he' was -, held, to.be,) sustained a great loss.
 

 The court charged the 'lender, with .that loss, as so pouch exacted from- ttre necessities of the borrower.
 

 That part of the 9th section of the fundamental rules of the bank , charter;, which is here drawn , in question-, is expressed in. these words, “ The bank shall not be at liberty to- purchase ány public debt whatever,
 
 nor shall it take more, than at the rate of six per centum per
 
 annum,
 
 for or upon its loans or discounts.’;
 

 A profit made, or loss imposed on the necessities of the borrower," whatever form, shape, or .disguise it may assume where the treaty is for a loan, and the. capital is to be returned at all events; has always been adjudged to be-so much profit taken upon a" loan; and to be a.violation of those laws which limit the. lender tó a specified vate of interest;
 

 According to this principle, the lender- has here taken
 
 *538
 
 forty-six per cent, for three years, or at the rate of about fifteen per cent, pgr annum above his prescribed interest. So that in this poin.t the certificate of this Court must be in the affirmative.
 

 . Some doubts have. been thrown out, whether, as. the charter speaks only of taking, it can apply to a Case in which' the interest has been only reserved, ■ not received. But on that point the majority are clearly of opinion, that
 
 reséYving
 
 must be implied in the word taking; since it can-’ not be permitted by law to stipulate for the reservation of that which it is*not permitted to receive. 1
 
 Hawk.
 
 P.
 
 C.
 
 620. In -those instances in which courts. are called upon to inflict a penalty upon the" lender,, whether in a civil'or criminal form of action, it is necessarily otherwise; for then the actual receipt is generally necessary to consummate the offence. But when the restrictive policy of a law alone is • in contemplation, we hold it to be an. universal rule, that it is,unlawful to contract to do that which it is unlawful to do.
 

 ' The second question propounded to this Court is,.“ Whether if the plea dogs make.oút a Case of violation Of a provision of the charter, the notes sued on, 6r the contract therein expressed, is void iri law,; so that no recovery can be had therein in this suit.:
 

 The question here propounded has relation exclusively to the legal effect of a violation of the provision
 
 in the charter^
 
 on the subject of interest; and does not bring in question the operation of the statute of usury of Kentucky'upon the validi ty of this contract. To understand.the gist of the question, it is necessary to-observe, that although thejact of incorporation' forbids the.taking of a greater interest than six per eent;.it does-not declare void any contract reserving a greater sum than is permitted. Most, if not all the acts passed in England; and in the states on .the same subject, declare such contracts usurious and void.
 

 The question then is,.whethér such contracts ate void in law, upon general principles.
 

 The answer would seem, to be plain and obvious, that no o'Ourt of justice can in its nature be made the. handmaid of iniquity. Courts are instituted to. carry into effect the laws.
 
 *539
 
 of a country, how can they then become auxiliary to the consummation ofwmlations of law?
 

 To. énu inerale here all the instances and cases in tyhich this reasoning has beén practically applied, would be to incur the imputation of vain parade.
 

 There-can be no civil right where there, can be no legal remedy ; and there can be no. legal remedy for that which is itselfillegal.
 

 That this is true of contracts violating the laws of morality, is ¡recognized in the familiar maxim, “
 
 ex turpi causa non oritur actio;”
 
 as has been exemplified' in some modern cases of a house let for immoral purposes. (Cited and admitted in 1
 
 B.
 
 &
 
 P.,340,
 
 and
 
 Esp. N. P.
 
 J 3.)
 

 In the case of Aubert
 
 vs.
 
 Maze, 2
 
 B. & P.
 
 374, it is exr pressly affirmed that there is no distinction as to vitiating the contract, between
 
 malum in se,
 
 and
 
 malum prohibitum.
 
 And that casé is a strong one to this point, since the contract there arose collaterally out-of transactions prohibited by statute.
 

 .So the same doctrine was maintained in equity upon a similar contract in the case of Watts
 
 vs.
 
 Brooks, 3
 
 Ves. Jun.
 
 612, in; which th¿ court observes, There is nothing immoral in this -transaction, but it is against a prohibitory statute. I' doubt a little the policy of the act, but I cannot allSw: it to be arguéd, that you can break a law covertly. Thé court will not execute these contracts.”
 

 So in the case of Webb
 
 vs.
 
 Pritcnett, 1
 
 B.
 
 &
 
 P.
 
 264, where the action 'was by a tavern keeper against a candidate for provisions furnished .to the voters.at an.election, contrary to.the statute of William. Although-the
 
 statute
 
 does not-declare the contract void, the
 
 Court
 
 declared it void, and in this explicit language: “ This action is. apparently founded on^a contract to disobey the law.” ' “ The defence set up proves the principle of the contract.” “ Then how shall an action be .maintained in that, which is a direct violation of a public law. The- contract is bottomed in
 
 ma-lum prohibitum
 
 of a very serious nature in the opinion of the legislature; -bow then can we enforce a contract to do that very thing which is .so much reprobated by the act1?” “This
 
 *540
 
 Court cannot give any assistance to the plaintiff consistently with the principles which havé governed the courts of justice at all times. Persons who engage in such transactions must not bring their cases before a court. of law, &c.”
 

 So in the case of assurance in illegal voyages, even where the underwriters have contracted with their eyes open, they are notwithstanding permitted to avail themselves of the plea of illegality ad libitum ;■ as in the cases of Camden
 
 vs.
 
 Anderson,
 
 6 T. R.
 
 723? adjudged in the king’s bench and affirmed in the exchequer; where it is declared that “ the defence is founded .upon a principle of law which is permanent to all obligation, by which the parties to a contract can bind themselves. 1
 
 B. Sf P.
 
 272.
 

 Áftd so in another case-of great hardship, Morck
 
 vs.
 
 Abel, 3 B. &
 
 P.
 
 35, where the insurance was. upon a trading in the East Indies prohibited by an obsolete statute, the plaintiff could not even recover back his premium, although admitted that" the risk never commenced because the policy was void in. its inception, on the ground of illegality.'
 

 Nor is it to voyages illegal by statute alone, that this principle applies. A respectable writer on insurance makes these remarks. “ Whenever an insurance is made on a voyage expressly prohibited by the common, statute, or maritime law of the country, the policy is of no effect. The principle on which such a regulation is founded, is not peculiar to this kind of contracts, for it is nothing more than that which destroys all contracts whatsoever,
 
 Park, 232,
 
 that.
 
 metí can never be presumed
 
 tp make an agreement forbidden by the laws;’ and if they should attempt it, it is. ip valid and will not receive the assistance of a eourt. of justice to carry it. into execution.
 

 Nor is the rule applicable only to contracts expressly forbidden; for it is extended to such as are calculated to affect the general interest and policy of the country.
 

 Thus a note givetl by a bankrupt upon a. secret compromise with á creditor is declared void ; as it produces inequality in the distribution of the bankrupt’s ’ effects, and evades the provisions and policy of the law,, which proposes
 
 *541
 
 to put all the creditors upon an equal footing. Wells vs. Girling, 1
 
 Brod.
 
 &
 
 Bing.
 
 447.
 

 And bn the same principle a note given for a wager on the future amount of a bianch of the .public. revenue is declared void ¡ because it interests an individual in diminishing the production of the revenue,
 
 2 T. R.
 
 610.
 
 2 B. & P.
 
 130.
 

 After citing these more modern decisions upon this subject, it may not be amiss to refer to some reporters, whose authority nas Deen consecrated by; the respect of ages. They will serve • to show the antiquity and„ universality of this doctrine.
 

 Thus in-1-
 
 Bulls.
 
 38, ft is laid down “ that wherever the ' consideration which is the ground of the promise, or the promise which is the consequence or effect of the consideration be unlawful, the whole contract is void.
 

 So in
 
 Hobart,
 
 72, and
 
 Dyer,
 
 356, “ if one promises to do a thing that is unlawful,- such promise is void.”
 

 And innumerable ancient cases might be cited from the best reporters, of the application of the rule to maintenance, to simony, and to promises made to public officers, engaging them to act contrary to. the duties of their, offices, or to individuals imposing upon them restraint inconsistent with the public interest.
 

 For. these reasons, and upon these decisions, ihe majority of the Court are of opinion that an'affirmative answer must also be certified upon the second question in the cause.
 

 And.this renders.it unnecessary to consider the third question.
 

 This cause came on to be heard on the transcript of the record from the. circuit court of the.United States, for the district of Kentucky, and on the questions and points bir which the judges of the said Circuit court were opposed in opinion, and which were certified to this Court for its opinion, and was argued by counsel^ oh consideration whereof, it is -the opinion of this Court, 1. That the facts set forth, and the averments in said plea, make out a case in which the corpo
 
 *542
 
 ration has taken more than at the rate .of six per cetatum per antium upon a loan or discount contrary tb and in violation of the ninth rule of the fundamental articles of the. constitution of the corporation. 2. That the plea does make out such a case where the notes sued on, or the contract therein expressed to pay the plaintiffs five thousand dollars is void in law, so that no recovery can be had thereon in. this suit. And 3. This Court being of opinion in the affirmative on the first and second points, renders it unnecessary to consider the third question; all of which is ordered and adjudged to be certified to the said circuit court.