*Dewey, J.
In dissenting from the opinion expressed by a majority of the Court in this cause, I do not controvert the correctness of the general doctrine therein stated, that a contract, made in violation of law, is null and void. But I do not assent to the proposition, that there is nothing in the history of our legislation on the subject of usury to prevent the unqualified application of that doctrine to agreements stipulating for more than legal interest. I contend it is fairly in-ferable from a review of the statutes that the Legislature did not intend by the act of 1838, or any other act, to render such agreements wholly void; but, on the contrary, *353 that they designed they should be valid as to the principal debt.
Our legislation on this subject can be traced back as far, at least, as 1799. In that year, the Territorial Legislature prohibited the taking of more than six per cent, interest'on loans, &c.; and enacted that if suit should be brought on a usurious contract, nothing but the principal should be recovered, after deducting whatever might have been paid by way of interest. Laws of 1799, p. 42. It is needless to remark, that the usual consequence of making a prohibited contract was not designed to 'follow a violation of this statute. The operation of the prohibition was limited to the interest. The law remained unchanged down to 1831, though several revisions had taken place in the mean time. In that year an act was passed forbidding, in the language of the preceding statutes, the taking of more than six per cent, per annum for the loan, use, or forbearance of money, &c., “ unless the agreement to pay a higher rate of interest be made in writing, and signed by the party to be charged.” R. C., 1831, p. 290. This act omits the clause of the prior statutes relative to the collection of the principal in a usurious contract. But it contains no repealing clause. I conceive, therefore, that it left the law as to verbal contracts as it stood before, though it virtually repeals it as to written agreements, which are rendered legal whatever rate of interest they may o intain. To effect this change, as I believe, was the sole objeoi of this act; for what possible motive the Legislature could have to render verbal contracts containing usury less valid than they were before, at the same time that they destroyed the very idea of usury as to written contracts, is beyond my conception. If such *were in fact their intention, they must have designed not to punish usury, but the omission to reduce a usurious contract to writing. Certainly these contracts were not required to be written for the purpose of preventing fraud and perjury. None of the reasons which have induced legislatures to require certain agreements to be evidenced by writing exists in this case. The evil lies in the nature of the contract itself, and *354 not in the mode of proof by which it shall be established. I do not then give a strained construction to the statute of 1831 in contending that the Legislature did not intend, by omitting the clause of the previous statutes giving efficacy as to the principal'in usurious contracts, to render such contracts entirely void thereafter, merely because they were verbal. The supposition implies an absurdity which I am not willing to impute to that body. I can avoid it by viewing these verba] contracts as they were before the passage of that statute—void only as to the interest.
It is true, that some ten days after the passage, of the act of 1831, and just at the close of the session, the Legislature inserted in a statute “authorizing the reprinting of sundry acts,” &c., the following clause, “All statutes and parts of statutes, and joint resolutions, which have not been passed, or adopted, at the present session of this General Assembly, or which have not by this act been ordered or directed to be reprinted at full length as aforesaid, be, and the same are hereby repealed.” R. S., 1831,. p. 334. The object of this clause is most obvious. It was designed to prevent confusion and repetition in the code then about to be published, consisting in a great measure of the mere reprint of former statutes. It is true, that' its effect was to repeal the clause in the former statutes respecting usury which was omitted in that of 1831. But a repeal under such circumstances ought to have but little, if any, bearing upon the construction of a single statute passed at that session. It has no weight when opposed to the consequences which I have been considering. It leaves the statute in question perfectly open to the construction which I have given it.
It must be admitted that the act of 1833, which reduced the rate of interest on written contracts to ten per cent., and imposed a penalty by indictment on the crime of usury, did *not reinstate the omitted clause. What then? I have shown, I think, that its first ommission in 1831 ought not, and did not-, have the effect of rendering usurious contracts entirely void; that such was not the design *355 of the Legislature. Can its repetition in subsequent statutes have any greater or different effect? But this same statute of 1833 has its omission too. Every act preceding it from 1799 down to its own date, contained ■ a clause fixing the rate of interest on certain debts, where there was no contract for interest; such as judgments, notes, and bonds after maturity, &e. This important clause the act of 1833 omits; and it was not reinstated until 1838. Did any one ever suppose that the Legislature meant by that omission, that such debts should not bear interest? Such an idea was never entertained for a moment. The omission evidently meant nothing. It has always been treated as nothing. I claim the same rule of interpretation for the omission of the act of 1821, and I claim no more. On what principle can it be denied me? To give efficacy to either omission would lead to consequences equally foreign to the intention of the Legislature.
It is admitted by the majority of the Court, that the fine inflicted by the statutes of 1833 and 1838 for the commission of the offense of usury, does not add to the force of the clause prohibiting the reception of unlawful interest in its effect upon the contract. I go further, and contend that the nature of the penalty affords evidence that the Legislature designed to continue the original qualification of that clause. What is the penalty ? A fine in twice the amount of the excess of the sum received over legal interest. The effect given to the prohibition by a majority of the Court leads to a singular result. It makes the law punish the intention to commit the offense of usury, with a hundred fold the severity that it does the offense itself! The lender of money, or a forbearing creditor, contracts verbally for six and a fourth per cent, or in writing for ten and a fourth per cent, interest per annum. The borrower, or indulged debtor, sets up the defense of usury. The whole debt is lost, though it aiüount to thousands. But the borrower or debtor prefers to pay the thousands which he owes, and the small matter of unlawful interest for which he contracted. The offense is *then consummated by the creditor; he subjects himself to a penalty perhaps of one dollar! Did *356 the Legislature, indeed, intend to produce this state of things ? Can they not be saved from this imputation? Nothing is more easy; we have only to understand them as they understood themselves. In 1831, they and their constituents had been accustomed for more than thirty years to consider usurious contracts valid as to the principal, and void only as to the interest. So to view them had become a fixed habit of the public mind. But in that year, in the haste of a Legislative revision of the statutes, and in an act which, surely, had not for its object the suppression of exorbitant interest, but its encouragement, a clause which had so long given character to these contracts is omitted; a general repealing provision, in which the attention of the Legislature was fixed upon no particular act, or the construction of any act, repeals the clause. Legislation on the subject of usury is continued seven years longer, and in a manner which stamps folly and absurdity upon the subsequent acts, if the entire nullity of usurious contracts was intended, but which was sensible and consistent if those contracts were meant to be left as they were when the omission occurred, void only as to the interest. That this latter result was intended I can not doubt. If I am mistaken, our statutes instead of holding up warnings against usury,, have been well disguised traps, and have caught many victims who were not aware of their danger. We sometimes look to foreign statutes, and the construction which has been put upon them, as guides to the construction of our own. The statute of Anne respecting usurious contracts forbids them, declares them void; and it punishes the crime of usury by a penalty of three times the amount of the principal debt. Here is no inconsistency between the effect of the prohibiton, and the penalty incurred by the offense. He who contracts to take usury loses his debt, but he who takes it forfeits thrice as much.
The view I have taken of this subject is not unsupported by authority. A statute of Rhode Island forbade the taking of - more than six per cent, per annum for the loan of money, &c., and inflicted a penalty of one-third of the principal and *357 all the interest for a violation of the act. The Su-pretnc *Court of the United States held, that the effect of the prohibition was not to render a usurious contract wholly void, but that it stood good for the principal, and was annulled only as to the interest. DeWolf v. Johnson, 10 Wheat., 367. I do not understand this decision to be overruled by the case of The Bank of U. S. v. Owens et al., 2 Peters, 527. They stand on different ground. The lattei rests on an unqualified prohibition to take more than six pc? cent, interest; the former on a prohibition restrained and limited in its effects upon the contract by the nature of the penalty. The Court, looking to that, conceived the design of the Legislature was not to make the whole contract void. It construed one part of the statute by the other. The two decisions were pronounced by the same judge; and I am not aware that they have ever been considered as inconsistent with each other by the Court which made them, or any of its members. I have also strong analogous authority in the decisions of this Court. Wc have a statute which forbids conveyances for the purpose of defrauding creditors and others, declares such conveyances null and void, and inflicts a penalty upon the parties to them. Plere is no qualified prohibition, no clause restraining the nullity of the conveyances to those designed to be defrauded, no proviso guarding the rights of bona fide purchasers without notice of the fraud. Yet this statute has, by the repeated construction of this Court, been held to mean that fraudulent conveyances are not void between the original parties, iior as against purchasers for a valuable, consideration without notice. It has been placed upon the footing of the statute of 13 Eliz. ch. 5, though that statute expressly declares that fraudulent conveyances shall be void only as to creditors, and contains a proviso saving the rights of bona fide purchasers. Our statute drops both these qualifying provisions. Yet the law has been held to remain unchanged. And why? Because, as I conceive, the consequences of the change would be such as to raise a presumption, that the Legislature did not mean to make the change. This is the ground I take in regard to *358 the subject under discussion. I approve of the decisions to which I have referred; and I can not but think that consistency requires me to adopt the same reasoning and views relative to the statute of 1838 on the subject of usury. *It is in view of the singular and pernicious consequences of a different construction, that I have come to the conclusion that the prohibition in that statute is qualified, and that the Legislature did not design to render usurious contracts invalid as to the principal debt.
G. II. Dunn, for the plaintiffs.
J. Hyman, for the defendant.
Per Guriam.—The judgment is reversed with costs. Cause remanded, &c.