Eanney, J.
The questions presented in this case are correctly stated in the printed argument of counsel for the plaintiff in error to be, first, Whether William Eussell was a competent witness to be *272 called in behalf of his co-defendant? Second, Whether the defense of usury could be set up in the case? But they are incorrect in. saying the “jury was sworn to assess the damages on the default of the defendant, Russell, and to try the issue joined on the plea of the other defendants.” On the contrary, it appears by the record, that Russell made default, “whereupon, by. consent of the said Wm. Russell and the said plaintiff, it is considered that the said plaintiff ought to recover, etc.; and neither party requiring a jury, the court assess the damages against him at $3550, for which judgment was rendered, and thereupon came a jury to try the issue joined between the plaintiff and the other defendants.”
I. This being the position of Russell, at the time he was called as-a witness, it becomes wholly unnecessary to consider the regularity of the judgment obtained against him. The plaintiffs can not object to it, for it was taken at their instance; nor can Russell, for it was taken by his consent; volunti non fit injuria. Under these circumstances, was he a competent witness upon the trial of the issue to which he was not a ¡Darty? It is not to be denied that this has been considered very much of a vexed question in courts proceeding upon common law principles alone. The elementary books, upon evidence generally lay down the doctrine of exclusion; and cite, in its support, the cases of Mant v. Mainwaring, 8 Taunt. 139, and Brown v. Brown, 4 Taunt. 752.
*But if these writers have drawn the correct conclusion, from these cases, it is very clear that their authority has been very, much shaken, if not entirely overthrown by more recent cases in England.
In the case of Worral v. Jones, 7 Bing. 395, which was an action on a bond, the principal suffered judgment by default, and was admitted as a witness for the plaintiff against the other defendant, his surety; he having no interest in the event. Chief Justice Tindal remarks : No casé has been cited, nor can any be found in which a witness has been refused upon the objection, in the abstract, that he was a party to the suit; on the contrary, many have been brought for ward in which parties to the suit, who have suffered judgment by default, have been admitted as witnesses against their own interest, and the only inquiry seems to have been, in a majority of the cases, whether a party called was interested in the event or not.
The direct question here made was involved in that case; since, *273 if the witness was not admissible for the eo-defendant, he was not admissible against him. 1 Greenleaf’s Ev. 399.
This case was reviewed, and the question again considered, in the case of Pipe, Ad’mr. v. Steele, 42 E. C. L. 888. Harvey & Steele were defendants; Harvey suffered judgment by default, Steele pleaded; the action was assumpsit; Harvey was tendered as a witness and admitted. The case was reserved upon this point: Lord Denman, G. J., remarked: “ The objection that he is a party to the record which prevailed in Brown v. Brown, and Mant v. Mainwaring, has been deliberately overruled in Worral v. Jones, a case of great authority, in which the Lord Chief Justice Tindal gave the unanimous judgment of the common pleas, that a party to the record may be examined as a witness, provided he be disinterested • we are to decide, therefore, whether such a defendant is disinterested.”
Again, in 61 E. C. L. 24, the action was upon a joint contract against one of the contractors; there being no plea in abatement, it was held that a co-contractor against *whom a previous judgment had been reversed upon the same cause of action was a competent witness for the plaintiff.”
These decisions were based upon the common law, and were not influenced or affected by any recent statute.
They very conclusively show that the ground of exclusion in the-English courts, at this time, arises alone from interest in the event. Entirely consistent with this, is the case of Willings v. Consegua, 1 Pet. 301, where Judge Washington remarks : “The general rule of law certainly is that a party to a suit can not be a competant witness. But it is equally so that the interest which that party has in the event of the suit, both as to costs, and the subject in dispute, lies at the foundation of the rule; and when that interest is removed, the objection ceases to exist.”
It is, however, but candid to state that several American eases, following the older English authorities, can be found in which the-exclusion is placed upon broader ground, and supposed to arise from considerations of policy.
An examination of the reasons for the rule, and the exceptions to its operation, as stated by Mr. Greenleaf, will show that in its-utmost rigor it could not avail in the present ease. This author, after stating the general rule to be “ that, when the suit is ended as to one of several defendants, and he has no direct interest in its *274 event as to the others, he is a competent witness for them, his own fate being at all events certain,” proceeds to say : In actions on contracts., the operation of this rule is generally excluded; for the contract being laid jointly, the judgment by default against one of several defendants will operate against him only in the event of a verdict against the others.” 1 G-reenl. Ev. sec. 356.
But certainly this reason can have no application where a judgment is actually entered by his consent, thereby precluding him from ever disturbing it. His fate is then, “ at all events certain,” whatever may be the result as to his co-defendants. He then comes fully within the reason given for the exception laid down in the same section, where one of *several defendants pleads a matter of personal discharge, and the plaintiff, as to him, enters a nolle prosequi. In such case, it is said, “ such defendant is no longer a party upon the record, and is therefore competent as a witness if not otherwise disqualified.”
That Eussell had no interest in the event, or, if any, that it was adverse to the parties calling him, seems to us very evident. His own liability was already fixed, and could be neither enlarged nor diminished. If anything favorable to himself could have been affected by his testimony, it would have been by denying himself to have been principal in the obligation, and charging his co-defendants, so as to have forced contribution from them. But whether interested or not is entirely immaterial if he was no longer a party to the action, within the meaning of our act to improve the law of evidence. And we are of opinion he was not. This construction of that act is not only consistent with its language, but is in, harmony with the general policy of our legislation, which has, from time to time, abrogated the common law rules of exclusion, until scarcely any remain.
II. If the evidence given was admissible, it is not denied that a case of usury was made, and the jury so found. But it is insisted that this defense could not be made. This position is based upon the 4th section of the act of the 24th of February, 1848, by which it was provided that the forfeiture specified in the 61st section of the act to organize the State Bank, etc., should “only be established by .an action in the name of the person or persons from whom the illegal interest has been taken; and the amount, when recovered, shall go to the use of common schools of the proper county.” 46 Ohio 1a. 92.
*275 This section of the act of 1848 was repealed by the first section of an act passed March 19,1850,48 Ohio L. 35, and the 61st section of the bank law, so far as it might have been repealed by the act ■of 1848, was revived. Between the enactment and repeal of the act of 1848, the notes sued upon .*in this case were given; although the suit was not commenced until some time after the repealing act was passed. It is claimed that the act of 1848 entered into and made a part of the contract between the parties at the time it was made, and could not be changed by subsequent legislation, without impairing its obligation.
Whether this position is tenable or not must depend upon the question whether this law affected the contract or only the remedy. It is certain the legislature had no power to make a contract, legal when made, illegal by subsequent legislation; and equally certain that the remedy merely, for the enforcement of prior as well as subsequent contracts, is at all times subject to its control. The plaintiff is bound to establish the existence of a valid contract of binding obligation as an indispensable predicate upon which to found the claim that its obligation has been impaired. If there was no contract, or, what is the same thing, only a void one, there was no obligation to be impaired.
Independently of the statute of 1848, it will be readily admitted that these notes were illegal and void. The bank was expressly limited by its charter to six per cent, interest; and if the charter had been silent, as to the effect of taking more, the leading cases of the Bank of the United States v. Owens, 2 Pet. 527, and Bank of Chillicothe v. Swayne, 8 Ohio, 277, followed and approved in many later cases in this state, would fully warrant the conclusion that the notes were void for want of corporate power in the bank to enter into such a contract.
The 61st section of the bank law also expressly declares, that “the knowingly taking, reserving, or charging, on any debt or demand made payable to such company, of a rate of interest greater than that allowed by this section, shall be held and adjudged a forfeiture of such debt and demand.” 43 Ohio E. 49.
* Whether this section was intended to do more than affirm the judicial doctrine already established, it is unnecessary to say: it certainly can not be held to do less, and give it any effect whatever. Whether, therefore, these notes are considered upon general principleas, or upon the express provisions of the charter of the bank. *276 they must be regarded as illegal and void ; being made by a corporation not only without authority of law, but in positive violation of it.
The act of 1848 did not attempt to authorize or legalize such contracts. It still left them illegal, void, and expressly forfeited as before. Indeed, the whole provision is predicated upon the assumption that the debt or demand is forfeited; and it then proceeds to provide in what manner the forfeiture shall be established and what disposition shall be made of the amount. Fairly construed, it took away or suspended the right to establish the illegality and consequent forfeiture, by way of defense to an action brought upon the contract, which would leave the fund in the hands of the debtor -r and authorized its establishment only in an action brought against the bank, and gave the fund recovered to the use of the common schools. In other words, the facts which establish the illegality and work the forfeiture shall not be shown by defense, but by action. The forfeiture, when established, shall not inure to the benefit of the debtor, but to the use of common" schools.
In all this it is impossible to see more than a modification of the-machinery by which the same end is attained. No right of the bank was affected by the repeal of this act; for neither this act nor the charter recognized the bank as having any rights, growing out of such a contract, to be affected. The illegal act done, the penalty, a forfeiture, immediately ensued under either. The bank had no-.right to any part of the money evidenced by such a contract. Before the act of 1848 it could not legally come into their hands after that act, if it came into their hands, they could not for a ^moment legally hold it. We are, therefore, clearly of the opinion that the act of 1848 operated only upon the remedy; and after its repeal, is to be regarded as though it had never existed, in respect to proceedings afterwards had. What is the consequence ? The plaintiff sued upon void obligations. The defendants, no longer-under disability to do so, offered to show, and did show, the fact. This constituted a perfect defense, and the court of common plea& did right in giving it effect.

Judgment affirmed.