KIRKSVILLE LIGHT COMPANY, Defendant in
Error, v. THE CITY OF KIRKSVILLE, Plain-
tiff in Error.

**Kansas City Court of Appeals, November 6, 1911.**

1. **CONTRACTS: Ultra Vires: Use of City Water for Ice Plant.** A
city of the third class, owning waterworks, has not the authority
to contract with a manufacturer of ice that he, without render-
ing compensation, may divert the water from the city reservoir
so that it will run over the pipes of his plant and thence back
into the reservoir, notwithstanding the water is returned in as
good condition as when received.

2. ———: ———: **Trustee: Gratuity.** A city, in operating water-
works, is a trustee for the benefit of the citizens thereof, and it
has no authority to lend the public water to a private business
enterprise, without proper consideration.

Error to Adair Circuit Court.—*Hon. J. G. Trimble,*
Special Judge.

REVERSED.

*A. Doneghy* for plaintiff in error.

*Higbee & Mills* for defendant in error.

ELLISON, J.—Kirksville is a city of the third
class and it owns and operates waterworks under the
provisions of Article 23, Chapter 84, Revised Statutes
1909. In the year 1908, there was an electric light
corporation in such city, with its plant in proximity to
the water works plant. In that year the electric light
company concluded to begin the manufacture of ice, and
to that end entered into a written contract with the
city, on the 15th of June, 1908, to furnish water to it
for a period of five years. After stipulating that the
city should furnish all the water the light plant "may

use for the purpose of manufcturing ice," at schedule rates per thousand gallons, the contract contains the following, and it is the matter now in controversy between the parties: "It being further agreed and understood between both parties to this contract that second party shall receive allowance and credit for all water returned by second party to first party, provided that the water so returned to first party be returned in as clean and pure condition as when received by second party, and that said second party shall be charged at the rate above mentioned, only for the net amount or quantity of water used by it and for the water not returned by second party in as clean and pure condition as when received by second party; and it is further agreed and understood by the parties hereto that payments for all water furnished by first party to second party, as hereinbefore provided, shall be made by second party at the end of each month from the date of this contract."

The authority claimed for the city to make the contract, is based on section 9925 of the statute aforesaid, reading as follows: "Any such city which shall erect or acquire a system of waterworks under sections 9924 to 9946, inclusive, may, and is hereby authorized and empowered to, supply water from its waterworks to persons and private corporations for use in or beyond the corporate limits of the city, and to enter into any such contracts therefor, upon such terms and under such rules and regulations as may be agreed upon by the contracting parties."

The city afterwards refused to recognize the contract, and the light company brought this action in equity to restrain it from shutting off the supply of water and to compel it to continue to furnish water as agreed. The trial court rendered judgment for the company.

The evidence disclosed that the water used by the light plant which was congealed and formed into

blocks of ice, was measured by a separate meter, and of that there is no complaint. The trouble between the parties has arisen over that part of the contract embodied in the clause for a *return* of the water to the city. There was to be no charge for such water. The meaning and object of this clause was shown to be that the light company was to be permitted to run the city water from the reservoir over and across the heated coils of the light company's ice plant for the purpose of cooling them off, the water to be measured by a meter as it came in at one point and by another meter as it passed out back into the reservoir at another point, the difference between the in and the out flow, caused by evaporation, being the quantity not "returned" by the light company, for which it would pay the city. The light company then so arranged or constructed the necessary part of its ice plant that the evaporation caused by the water passing over the heated coils ceased. This was done by having the water pass through coils constructed for that purpose from its entrance to its exit back into the city reservoir. The result was that *all* of the water was returned; and the city got nothing for its use. The city water commissioner, corroborated by others, testified that for the year 1910 the company used over fifty-one million gallons of the city's water, returning all of it and not paying anything to the city. Thus the city was operating a substantial part of the plaintiff's ice plant free of charge.

It ought not to require argument or illustration to show that the city, a trustee for the inhabitants thereof, had not the authority to gratuitously divert the city water for private use without compensation. Necessarily the city was put to great expense in constructing and maintaining a water plant whereby water was pumped from a distant river into reservoirs. The water thus obtained and stored was for the use of citizens upon payment of uniform prices by all of a like class; and any device whereby one or more would

obtain the use of it without rendering compensation, is contrary to the intent of the statute and object of the power conferred upon the city and is unlawful.

There is an interesting opinion by Justice Johnson, of the Supreme Court of the United States, in a case not like this, yet involving a like principle, wherein it is said that "a fraud upon a statute is a violation of the statute." And that it is a "universal rule, that it is unlawful to contract to do, that which it is unlawful to do." And that "wherever the consideration which is the ground of the promise, or the promise which is the consequence or effect of the consideration, be unlawful, the whole contract is void." [Bank v. Owens, 2 Peters, 527.]

The evidence showed that the act done under the contract, as interpreted by the parties, was that the entire daily capacity of the waterworks was diverted to the use of the ice plant without so much as a cent of compensation. This is sought to be excused by the provision that the water thus borrowed was to be returned to the city. That is but a subterfuge. The law contemplates that the city is a vendor and not a lender of the use of water. To uphold the provisions of the contract here considered would be to justify the city in permitting the diversion and free use of public property, acquired at great expense, to any enterprise carried on for private gain.

We have no doubt that the contract is void, and the judgment must therefore be reversed. All concur.