

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. E. G. Moseley
Civil District Attorney
Dallas, Texas

Dear Sir:

Opinion No. O-1917

Re: Disposition of money removed from gambling machines and deposited with District Clerk under orders of court.

This will acknowledge receipt of your inquiry for our opinion as to the proper disposition of money removed from slot machines and marble tables, which have been destroyed by order of the various district courts of Dallas County. You state that over a period of three years the sum total of some ten thousand dollars has accumulated in the office of the District Clerk of your county under and by virtue of the following provision of each court order requiring the destruction of the gambling devices:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that before the same are destroyed, all moneys shall be removed therefrom and deposited with the District Clerk of Dallas County, to be by him applied to the payment of all court costs incurred in this cause, and that any balance, if any, be held subject to further orders of this court."

You enclosed with your letter a comprehensive brief in which you analyze the general problem by asking and answering four questions, as follows:

"1. Can money found in gambling devices be seized along with the devices?

"2. Can the manufacturer, owner, operator or

Hon. E. G. Moseley, Page 2

> player recover any part or portion of the
> money after seizure?

> "3. What is the status of money seized in
> gambling devices?

> "4. What disposition may be lawfully made of
> money seized in gambling devices?"

After discussion of each of the above questions
you answer the first in the affirmative, the second in
the negative; to the third that the money is in custodia
legis, and to the fourth that the court could order the
money applied to any of five uses -

(a) Charitable institutions;

(b) To the state for specific uses;

(c) To the county to be used as ordered by the
court;

(d) To any cause that is benevolent in its
nature;

(e) To any cause that would be beneficial to
the public at large.

You indicate your belief that a writ of mandamus
would lie to compel the various district judges entering
judgments as above referred to, to proceed to enter a
further order disposing of the money now held by the
clerk, for one of the purposes named by you.

Chapter Six of Title 11 of the Penal Code, 1925,
with amendments thereto comprise the statutory prohibi-
tions and provide the remedies against gaming in Texas.
Provision is made through Articles 632 to 658 for the
suppression of violations, and the seizure, condemnation
and destruction of property used for gaming purposes.
The pertinent statutes, and the only ones we have been
able to find indicating the disposition of property law-
fully seized, are Articles 636, 637 and 638 of the Penal
Code.

Hon. E. G. Moseley, Page 3

Article 636 requires the officer serving a search warrant to file a return on same, with a list of property seized designating the place of seizure and name of owner or person from whom possession was taken. Then notice must be issued and served on either the owner or person in possession commanding appearance within a designated time, not less than five days from date of issuance, to show cause why the seized articles should not be destroyed.

Article 637 is here quoted in full:

"Art. 637.  _Destroyed by order of court._

"If upon a hearing of the matter referred to in the preceding article, the justice of the peace, county judge or district judge, before whom the cause is pending shall determine that the property seized is a gaming table or bank or is used as equipment or paraphernalia for a gambling house, and was being used for gaming purposes, he shall order same to be destroyed, but any part of same may, by order of the court be held as evidence to be used in any case until the case is finally disposed of. Property not of that character or not so used shall be ordered returned to the person entitled to possession of the same. The officer, within not less than fifteen nor more than thirty days from the entry of said order shall destroy all property the destruction of which has been ordered by the court, unless the owner, lessee or person entitled to possession under this law, shall, before the destruction of said property, file suit to recover same."

In 1935, by the Acts of the Forty-fourth Legislature, Regular Session, Chapter 203, p. 490, Section 2 was added to Article 637. We quote Section 2 as added:

"Sec. 2.  If upon a hearing of the matter referred to in Article 636 Penal Code of Texas (1925) the justice of the peace, county judge or district judge before whom the cause is

Hon. E. G. Moseley, Page 4

pending shall determine that the property
seized, or any part thereof, is not gambling
paraphernalia per se, but that the same or
any part thereof was used as equipment or
paraphernalia for a gambling house and was
being used for gaming purposes and that said
property is capable of being used for some
legal purposes, he may, in his discretion, by
order of the court declare the same confiscat-
ed and cause the same to be delivered to the
State of Texas, or any political subdivision
thereof or to any State institution to be kept
by it for its own use and benefit.

"The officer shall show by his return the
disposition of the property made by him which
shall be in compliance with the orders of the
court."

The emergency clause of the amendatory bill,
denoting the legislative intent, recites possession
by peace officers throughout Texas of "chairs, tables,
carpets and other kinds of furniture of the value of
thousands of dollars" which, "under the present law
must be held for evidence or destroyed by an order of
the court," etc. Nowhere in the Act does the Legisla-
ture evidence any intent to dispose of the money con-
tained in gaming devices or paraphernalia.

Article 638 grants the right of any person in-
terested in or entitled to property seized, to try the
issue of whether such property is a "gaming table, or
bank or device or was used as equipment or parapherna-
lia of any gambling house" and to recover the same upon
a favorable determination thereof.

In our investigation of the questions, we find
a letter opinion written by Assistant Attorney General H.
L. Williford to Honorable Jean Rodgers, County Attor-
ney at Quanah, Texas on August 2, 1938, holding that
the proper construction of Article 637, Penal Code,
supra, containing the language "Property not of that
character or not so used shall be ordered returned to
the person entitled to possession of the same," would
render it proper to have the court enter an order in

Hon. E. G. Moseley, Page 5

the proceeding instructing the sheriff to return the
money to the person from whom the possession of same
was taken "inasmuch as the money is not a gaming table
or bank, equipment, or paraphernalia for a gambling
house." (Letter Opinions, Attorney General, Vol. 382,
p. 542).

In the case of Attorney General v. Justices of
the Municipal Court of the City of Boston, 103 Mass.
456 (Sup. Ct. Mass. 1869) it appears that a search war-
rant was issued out of the municipal court, and upon
its execution a quantity of gambling paraphernalia was
seized such as "one faro table, one lay-out, one shuf-
fling board, one cue case, eight cue cards, nine packs
cards," etc., also other personal property such as "one
side-board and one marble-top, one pine table, one hair-
seat divan, one common lounge, eight cane chairs, one
looking-glass, one plated pitcher," etc., "also one
hundred and thirteen dollars and fifty-two cents in cur-
rency, taken from the faro bank."

The Massachusetts statute provided for the
seizure and destruction of gaming apparatus and imple-
ments and for condemnation and sale of other personal
property seized at the same time and from the same
premises.

The proceeding was for mandamus to require the
municipal court to proceed to order the destruction of
the gaming apparatus and condemnation of other personal
property. The judges of the municipal court took the
view that that court did not have jurisdiction in the
case, although the warrant was issued by them. The
Supreme Court held that the gaming apparatus and imple-
ments could be destroyed and the other personal proper-
ty condemned and sold after proper notice, but with
reference to the money in the faro bank, the court said:

"With regard to the money seized by the of-
ficer, there seems to be no reason for saying
that there is any legal authority for proceed-
ing against it with a view to its forfeiture."

In the case of Chappell v. Stapleton (1938) 58
Ga. A. 138, 198 S.E. 109, where slot machines which

Hon. E. G. Moseley, Page 6

were being operated in the plaintiff's place of business, and contained money that had been played therein, were seized by deputy sheriffs, and machines were being operated in violation of law at the time they were seized, it was held that plaintiff could recover from the deputies the money contained in the machines at the time of seizure. The court said the money was not "inherently bad," that "its ordinary and customary use is not only lawful, but in most cases absolutely necessary." We quote further:

"We have no statute that provides for its condemnation or confiscation. Where the purpose and ordinary use of property is lawful, the plaintiff in such a case as the one at bar is entitled to have his property restored or returned to him * * * It is well established that, while the law will not lend its aid to one of the parties to an illegal transaction or contract, the rule has application as between the immediate parties only, and one in possession of the fruits of an illegal transaction or contract to which he was not a party cannot invoke the rule. * * * "

In the case of Dorrell v. Clark, 90 Mont. 585, 4 P. (2d) 712, 79 A. L. R. 1000, cited by you in your brief, the sheriff of Wheatland County seized two slot machines which had been installed in the plaintiff's place of business under an agreement that he would pay to the owner a percentage of the money taken in, and arrested the plaintiff, who pleaded guilty to the charge of operating them. The court ordered the machines destroyed and any money found in them to be deposited with the clerk of the court. After the destruction of the machines, $66.85 was so deposited and on refusal of the clerk to turn the money over to him, plaintiff brought suit to recover the money so deposited. With one judge dissenting, the Supreme Court of Montana held that, while the statute authorizing the seizure and destruction of slot machines did not authorize the seizure of money as such, the sheriff did not commit a trespass in carrying away the money found in the machines, and that the plaintiff could not recover it in an action for that purpose. With reference to the same rule as

Hon. E. G. Moseley, Page 7

later announced by the Georgia Court in Chappell v.
Stapleton, supra, the opinion points out that the facts
of the illegal enterprise of operating the slot machines
were necesserily disclosed to the court by the plain-
tiff in attempting to make a prima facie case. We
quote:

"Thus the plaintiff, admitting the violation
of the law, asked the aid of the very court
charged with the duty of punishing that viola-
tion, and which had performed that duty, in
securing the fruits of his outlawry, which he
admitted he would not be entitled to retain
under the law, had he reduced the same to pos-
session. * * *

"Plaintiff asserts that the general rule is
that illegality cannot be set up by a third
person, but is only available to a party to a
contract (13 C. J. 508); but he fails to note
that the text reads: 'This rule is of course
subject to an exception, where it is attempted
to assert rights based on the contract.' Strict-
ly speaking, there is no contract here involved;
plaintiff merely seeks the aid of the court to
reduce to possession the spoils of the law's
violation."

The Montana Court by express language, did not
pass upon the ultimate disposition of the money, as
witness the following language:

"We are not concerned with the ultimate dis-
position of the money; we agree that it was not
deposited with the court as a 'fine or forfeit-
ure' to go to the school fund; as it constitutes
a retrieved portion of a destroyed machine, can
it be considered 'treasure trove'? Ferguson v.
Ray, 44 Or. 557, 77 P. 600, 1 L. R. A. (N.S.)
477, 102 Am. St. Rep. 648, 1 Ann. Cas. 1;
Vickery v. Hardin, 77 Ind. App. 558, 133 N. E.
922. However, whatever may or may not be done
with the money in the custody of the court, the
power of our courts, either at law or in equity,
cannot be invoked in aid of one showing a viola-
tion of the law, to complete the illegal

Hon. E. G. Moseley, Page 8

transaction and secure to the violator the
fruits of his outlawry."

While we have been unable to find any Texas de-
cision squarely in point, we believe certain language
used in the case of Campbell v. Hood, 35 S. W. (2d) 93,
(Comm. App.) applicable to the principles here under
consideration. In that case the court denied recovery
for commissions on the sale of real estate, where a cor-
poration without power to do so made a contract of pur-
chase. The opinion reviews many decisions, discussing
the principles involved, of which the following is a
typical example:

"It is a salutary principle, universally
applied, that a court will decline to lend its
aid to a person seeking compensation for the
doing of an act which violates the public
policy of the state as expresaly declared by
the law making power. A clear statement of
this principle is that given by the Supreme
Court of the United States in Bank of United
States v. Owens, 2 Fet. 536, 7 L. Ed. 508,
wherein it is said:

"'No court of justice can in its nature
be made the handmaid of iniquity. Courts
are instituted to carry into effect the
laws of a country; how can they then be-
come auxiliary to the consummation of
violations of law? * * * There can be
no civil right, where there can be no
legal remedy; and there can be no legal
remedy, for that which is itself illegal.'

"Again, the same court in Cappell v. Hall,
7 Wall. 542, 559, 19 L. Ed. 244, reaffirmed
this doctrine in the use of this language:

"'The principle to be extracted from
all the cases is, that the law will not
lend its support to a claim founded
upon its violation.'"

We note your conclusion that the money seized in

Hon. E. G. Moseley, Page 9

gambling devices and deposited with the clerk of the court, by order of the court, occupies the status of money "in custodia legis."

It has been generally said that property is in "custodia legis" when it has been lawfully taken by authority of legal process, and remains in possession of a public officer or a court officer empowered by law to hold it. Allen v. Hargadine-McKittrick Dry Goods Co., 325 Mo. 400, 28 S. W. (2d) 670, 673. See also Union Indemnity co. v. Florida Bank & Trust Co., 48 F. (2d) 595, 697; Bouvier's Law Dictionary, 3rd Rev.; and property seized by virtue of a search warrant has been so denominated; Dorrell v. Clark, supra; Enloe v. Lawson, 146 Ore. 621, 31 P. (2d) 171, 174; State v. Gambling Equipment, 45 Ariz. 112, 40 P. (2d) 746, 747; Oriste v. Turn, 112 S. C. 369, 99 S.E. 703.

From reading the cases and authorities cited, and others, we agree with the answers given by you to the first three questions propounded in your brief. To summarize:

(1) Money found in gambling devices under the facts given may be legally seized along with the devices.

(2) Neither the manufacturer, owner, operator or player may recover any part or portion of the money after seizure and order of the court placing same in legal custody of the clerk of the court.

(3) The money so seized and deposited with the clerk of the court is properly termed to be in "custodia legis".

Your fourth question presents further difficulty to which we shall now advert.

We have been unable to find authority for any disposition of money or property held in custodia legis, where there is no express legislative grant of authority, or provision made for some specific purpose. We have read your brief with interest, but regret we are

Hon. E. G. Moseley, Page 10

unable to follow your reasoning that since -

> "the state is not entitled to the money, that
> the county is not entitled to the money, that
> certainly no particular public official is en-
> titled to it as a matter of right, and neither
> is any particular person, so the only disposi-
> tion that can be made of such money is by order
> of the court in whose custody it was placed
> and held. The court therefore, in its discre-
> tion, may make any beneficial disposition
> thereof it may see fit, being limited only to
> the extent that such disposition should not be
> unreasonable or frivolous, or a disposal that
> would shock the conscience of a court of
> equity."

We are inclined to the belief that the principle enunciated in the following language from the Supreme Court in the case of Withers v. Patterson, 27 Tex. 491, 86 Am. Dec. 643, would control:

> "The jurisdiction of the court means the
> power or authority which is conferred upon a
> court, by the constitution and laws, to hear
> and determine causes between parties, and to
> carry its judgments into effect. It is a
> plain proposition, that a court has no power
> to do anything which is not authorized by law.
> The powers of our county courts, in respect
> to the estates of decedents, are all conferred
> by statute. Whatever the statute authorizes
> the court to do, it may rightfully do. But
> it does not follow, because the statute au-
> thorizes the court to order the sale of land
> under certain circumstances, that all sales
> of land by order of the court are authorized."
> - - - (Emphasis ours).

It is our opinion, under the facts as presented by you, that the writ of mandamus could not be successfully maintained. 28 Tex. Jur. 568, et seq., and authorities cited.

By way of suggestion, we respectfully submit that since at least a portion of the money has already

Hon. E. G. Moseley, Page 11

been held for a considerable time, no ill consequences will follow its continued retention until the Legislature by appropriate action designates by statute the use or function to which it should be applied. We entertain no doubt, but that, apprised of its existence, amount and present status, a prompt mandate will flow from that honorable body, directing its speedy dispensation.

Upon mature reflection and careful consideration, such is our recommendation, rather than an attempted mandamus.

We wish to express our appreciation for your complete submission of the questions involved herein and your excellent brief which has been of substantial aid in our study thereof.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Benjamin Woodall*

Benjamin Woodall
Assistant

BW:ob

APPROVED FEB 14, 1940

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN