SUPREME COURT                    [*Harrisburg*

95      122
24 SC ¹259

95      122
f 32 SC ²102
f 32 SC ¹103

## Stiles's Appeal.

1. Building associations chartered under the Act of April 12th 1859 must operate strictly in conformity with the act to entitle them to the privileges it confers. Loans made by them can only be made out of the amount in the treasury derived from interest, dues and fines received from members and given out at each stated monthly meeting to the highest bidder. Such association cannot borrow money from banks or others for the purpose of loans, nor can they fix a minimum rate of premium below which they will accept no bid. They are bound to offer all that is in the treasury to open competition, so that the members may obtain the loan at a low premium if there should be no bid at a higher.

2. If the association violates the act in any of the above-mentioned ways, and a particular loan is affected thereby, it may be set up as a defence to an action against a borrowing member.

3. A judgment was entered against a borrowing member on a penal bill given for a loan and he petitioned the court for a rule to show cause why the judgment should not be opened, alleging among other reasons that he took his loan at a premium of $24, that being the minimum premium fixed by the association : *Held*, that this was sufficient ground to open the judgment and let the defendant into a defence.

June 9th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Court of Common Pleas of *Columbia county :* Of May Term 1880, No. 123.

Appeal of Jeremiah Stiles from an order of the court refusing to open a judgment against him and let him into a defence. The judgment was entered against him by the Benton Mutual Savings Fund and Loan Association on a penal bill conditioned for the payment of $200. In his petition for a rule to show cause why the judgment should not be opened, Stiles averred, inter alia, that an execution had been issued upon said judgment and a levy made upon the property of petitioner ; that under said levy said association sought to collect a larger sum than is due them ; that at a regular meeting of said association petitioner had bid for and taken the loan for which the judgment was entered at a premium of $24, "that being the minimum rate fixed by the association for that year, and said association refusing to receive a less bid." The petitioner further averred that he would be able to show that the plaintiff has violated its charter, exceeded the powers contained therein and was therefore only entitled to recover the sum actually loaned with six per cent. interest. That among said violations were the borrowing of money from banks, banking institutions and individuals to loan to its members at rates in excess of six per cent., the charging of interest upon said loans by said banks and their payment out of the funds of the association, the fixing of a minimum rate of premiums, the refusal to loan below said rate and the charging of excessive fines.

The court, Elwell, P. J., refused to grant the rule in an opinion, saying :

" The law is too well settled to require discussion of the defendant's right to make defence on the ground taken in this collateral proceeding. ' He cannot withhold payment on that ground. The affidavit does allege that the plaintiff is proceeding to collect more than is due to it. But it does not allege payments except as before stated up to June or July 1877. By the terms of his bond more is due. If he has made payments or has been otherwise discharged it should be set forth with reasonable certainty. The defendant has the same opportunity to set up his defence as if the balance claimed had been mentioned in the præcipe and the failure to make payments for six months had been suggested. Rule refused."

From this decree this appeal was taken.

*Hervey E. Smith* and *A. C. Smith*, for appellant.—If the association is to be presumed as being incorporated under the Act of 12th April 1859, and therefore entitled to the immunities contained in the sixth section of said act, viz. : " That no premiums, fines or interest on such premiums that may accrue to the said corporation according to the provisions of the act shall be deemed usurious, and the same may be collected as debts of like amount are now by law collected in this Commonwealth," then the question arises not as to the validity of the charter of the association, but whether the association drawing its vital breath from and being the mere creature of the statute can act in any other manner than that prescribed by the act from which it derives its existence. That it cannot is abundantly sustained by authority : Hibernian Turnpike Co. *v.* Henderson, 8 S. & R. 222 ; Commonwealth *v.* E. & N. E. Railroad Co., 3 Casey 351. The question of usury was for the jury : Chamberlain *v.* McClurg, 8 W. & S. 36. And the action of the corporation through its board of directors in fixing the premium upon loans at not less than $24 per share, and refusing to grant loans unless the premium bid was equal to or in excess of this sum, was and is arbitrary and unauthorized : State *v.* Greenville Building and Savings Association, S. C. of Ohio, reported in 3 Law & Eq. Reporter, p. 515.

A contract will not be enforced when made in violation of an Act of Assembly, although not expressly made void : Fowler *v.* Scully, 22 Id. 456 ; Mitchell *v.* Smith, 1 Binn. 110 ; Mayburn *v.* Carlin, 4 Dallas 298 ; Biddis *v.* James, 6 Binn. 321 ; Seidenbender *v.* Charles's Administrators, 4 S. & R. 160 ; Badgley *v.* Beal, 3 Watts 263 ; Columbia Bank & Bridge Co. *v.* Haldeman, 7 W. & S. 233. The association can take nothing by implication. They must find their warrant for their excessive rate of interest appearing on the bond either in an act with whose provisions they have complied or in the general laws of the state. Can they do either ? Failing to do so, must they not fail in the enforcement of their judgment ? If this association borrowed money from

banks or individuals and loaned it out to members, it violated its charter.

*E. H. Little,* for appellee.—A violation of the charter of incorporation cannot be made the subject of judicial investigation in this collateral proceeding. The only evidence competent to prove the forfeiture of a charter is the judgment of a court directly on the point. A plea involving the forfeiture or invalidity of the charter would be demurrable, or might be treated as a nullity by the court. Proof of the violation of the Act of Assembly by which the corporation is created would involve the forfeiture or invalidity of the charter itself: Becket *v.* Uniontown Building Association, 7 Norris 213–14. Opinion by Stowe, P. J., affirmed by this court; Irvine *v.* Lumbermen's Bank, 2 W. & S. 190; Dyer *v.* Walker, 4 Wright 157; Coil *v.* Pittsburgh Female College, 4 Id. 439; Cleveland & Pittsburgh Railroad Co. *v.* Speer, 6 P. F. Smith 326; Cochran *v.* Arnold, 8 Id. 399; Workingmen's Building and Loan Association, *v.* Coleman, 8 Norris 428. A motion to open a judgment entered upon warrant of attorney is an appeal to th equitable powers of the court; and in an appeal under the Act of April 4th 1877, Pamph. L. 53, the question is as to the rightful exercise of discretion by the court below: Kneedler's Appeal, 11 Norris 428.

Chief Justice SHARSWOOD delivered the opinion of the Court, June 21st 1880.

The act entitled " An act to confer on certain associations of the citizens of this Commonwealth the powers and immunities of corporations and bodies politic in law, and to confirm charters heretofore granted," passed April 12th 1859, Pamph. L. 544, is a general law for the regulation of associations known as Building and Loan Associations. This appears not only from the general scope of its provisions, but from the recitals in its preamble which declares that " such associations are meritorious and deserving the care of the state." The learned judge below fell into an error in considering it as merely the charter of any association included in its benefits—the violation of which could not be inquired of collaterally. The charters of such corporations are derived from the Courts of Common Pleas, and it may be true that the violation of their provisions by the corporation cannot be the subject of collateral inquiry nor set up by any debtor as a defence to an action. They can be declared forfeited only by a direct proceeding in the name and by the anthority of the Commonwealth. Corporations, however, as well as individuals, may be subject rightfully to general laws regulating their contracts and proceedings. More especially is this true where such corporations accept their charters after such laws have been passed and therefore subject to their provisions.

Assuming the Benton Mutual Saving Fund and Loan Associa-

tion to be an association within the provisions of the Act of 1859, which is the only ground upon which they can claim exemption from the law prohibiting the taking of a greater rate of interest upon the loan of money than six per cent., it is evident that their contracts must be made in conformity to the provisions of that act in order to entitle them to the privilege granted by it. It makes an exception in their case from the general law of the state, and they must bring themselves within the exception. They can loan money only to members of the association—in amounts not exceeding two hundred dollars on each share of stock held by them—and the loans can only be of the amount in the treasury derived from the interest, dues and fines received from the members and given out at each stated monthly meeting to the highest bidder. It would be a gross perversion of the whole spirit and design of such an association to borrow money from banks or others for the purpose. It is equally so to fix a minimum rate of premium below which they will accept no bid. · They are bound to offer all that is in the treasury to open competition so that the members may obtain the loan at a low premium if there should be no bid at a higher. The practical operation of such institutions is that wherever the member procures a loan at a premium below the average of the premiums for the whole time the association has to run, he is to that extent a gainer; where his loan is at a premium higher than the average, he is to that extent a loser. This is a most valuable feature in such associations, and hence the great importance of maintaining the principle of free competition in the bids.

Where the member is told that there is a minimum premium below which loans will not be made, he must offer that amount for the loan whether any other one offers or not. If no offer to that amount is made, the money remains in the treasury without investment. It is evident in this way that the members who are not borrowers will obtain a very undue advantage over the members who are borrowers. These institutions are liable like every thing else human to abuse, and we are bound to guard them carefully from being perverted into mere contrivances by which capitalists can evade the laws against usury. So the legislature evidently intended they should be by the act. As to the allegation in the petition, that the association was in the habit of borrowing money to loan out, it was too vague to avail the defendant. He must show that the money loaned to him had been borrowed. But by the allegation that he took his loan at the premium of twenty-four dollars, that being the minimum rate fixed by the association, and said association refusing to receive a less bid, he laid, we think, a sufficiently clear and tangible ground upon which the court below ought to have granted the rule to show cause why the judgment should not be opened. Of course, upon the hearing of the rule, he will have to produce evidence to satisfy the court of the truth of the

averments of his petition or affidavit, and that the rule ought to be made absolute, which the plaintiff will have the opportunity to controvert by opposite evidence.

Order reversed, and record remitted for further proceedings.