# CHARLESTON

MILLER v. THE PRUDENTIAL BANKING & TRUST CO. *et al.*

Submitted June 8, 1907.    Decided December 10, 1907.

1. BUILDING AND LOAN ASSOCIATIONS—*Statutes—Compliance—Usury Exemption.*

    If a foreign building and loan association, doing business in this state, contravenes the provisions of section 26, chapter 54, of the Code, relating to building and loan associations formed in this state, the exemption from usury afforded by that statute will be denied it. (pp. 110, 116.)

2. SAME—*Premiums—Bidding for Funds.*

    Premium or profit for the use of an advance or loan by a building and loan association to a member thereof must be fixed or determined, under the law of this state, by competitive bidding by the members of such an association for right of priority to the mutual funds; or, in default of bidders at or above a minimum premium, fixed by the by-laws, by awarding the money to a member, at such minimum premium. (pp. 110, 116.)

3. SAME—*Usurious Contracts—Enforcement.*

    When such premium or profit is fixed or determined by any other method than that regulated by our law, and such premium or profit is greater than the legal rate of interest, the contract

respecting the advance or loan is usurious, and, to the extent of such usury, can not be enforced in the courts of this state. (pp. 110, 116.)

4. Same—*Premiums Arbitrarily Fixed.*

Premium or profit arbitrarily fixed by the by-laws of an association, domestic or foreign, in contravention of section 26, chapter 54, of the Code, and without regard to its provisions as to ascertaining the right of priority among members to loans, by a selling of the money in the treasury to the bidders of the highest premium therefor, or, in default of bidders at or above a minimum premium, fixed by the by-laws, by awarding the money to a member, at such minimum premium, is unlawful and usurious, if it exceeds the legal rate of interest, when stipulated for in a contract respecting an advance or loan.  (pp. 110, 116.) .

5. Same—*Renewal*

A renewal of an usurious contract, between the same parties, partakes of the infirmity of the original agreement, and the original taint attaches to all consecutive obligations or securities growing out of the original vicious transaction.  (p. 116.)

6. Same—*Change of Securities —Evidence of Debt.*

A mere change of securities or evidences of debt for the same usurious loan, to the same person who 'reserved the usury, does not purge the original consideration; and, whether such new securities or evidences of debt are in renewal of former ones, or in payment of the debt tainted with usury, the original taint remains until a new consideration intervenes.  (p. 116.)

7. Same—*Renewal of Debt.*

A debt, evidenced by bond and secured by deed of trust on real estate in this state, not wholly void in its inception because of usury with which it is tainted, and which usurious debt is afterwards simply renewed, or the form thereof changed, by the execution and delivery of notes for the same usurious amount, secured by new deed of trust on the same real estate, which execution and delivery of said notes and deed of trust securing them, and the place of payment fixed by them, are in a state by the laws of which contracts are void for usury, is not wholly invalidated because of such renewal or change in said state so as to prevent its enforcement to the extent justified by the laws of this state, under which said original usurious contract is called in question. (p. 117.)

Appeal from Circuit Court, Cabell County.

Bill by James S. Miller against the Prudential Banking and Trust Company and others.  From an adverse decree, defendants appeal.

*Affirmed.*

W. K. COWDEN and ORDWAY PULLER, for appellants.

C. S. WELCH, for appellees.

ROBINSON, JUDGE:

The assignments of error and the arguments in the briefs of counsel herein may at once be reduced to the real question presented. Nor does it behoove us to now state the facts involved. These will sufficiently appear as we proceed.

The question is: What sum is legally due from the plaintiff to the defendant company, as the successor of the Metropolitan Building and Loan Association of Richmond, Va., on account of an advance of $1,900.00 made to him by said association, on his nineteen shares of stock therein, on the 11th day of March, 1897, the repayment of which was evidenced by his bond, secured by deed of trust on his real estate in the city of Huntington, the residue of which indebtedness after payments thereon was, in the year 1901, renewed by a series of notes, payable monthly, with legal interest, executed by plaintiff and delivered to defendant company, secured by a new deed of trust on the same real estate? In other words, was the said building and loan contract invalid as such under our law, and therefore usurious; and, if so, did the usury follow into, and taint therewith, the said notes given in renewal? The controversy arises by this suit of plaintiff, in the circuit court of Cabell county, alleging such usury in the notes aforesaid, and enjoining a sale under the deed of trust securing them, and a full resistance, by the defendant company and its receiver, of plaintiff's contention and procedure.

We are therefore called upon to consider the original building and loan contract, and to see if it was such as is authorized by our law and by it exempt from usury, because of the bonus or premium taken above the legal rate of interest.

We find it to be a contract calling for the repayment of said advance by monthly installments of $23.75 each until such time as the shares of stock should be fully paid up, or until one hundred and forty-four such payments should be made, which monthly payments were recited to be in full of all dues, premium and interest in accordance with the charter and by-laws of the association. But in the said

charter and by-laws we find no mention of anything under
the name of premium and interest, although the dues are
therein stated to be fifty cents per month per share. The
by-laws did provide, under the head of advances, that, for the
class of stock which plaintiff held, the bond should provide
for the payment of one dollar and twenty-five cents per
month per share until the maturity of said shares,
but when one hundred and forty-four payments were made
no further payments were required. This sum, we know
by the by-laws, embraced the fifty cents for dues, but the
residue of it was given therein no particular name. The
bond and deed of trust, however, tell us that this residue
was to be in full of premium and interest, but nowhere
in the papers pertaining to this loan or advance is it
stated what portion was premium and what portion was in-
terest. A reference to the by-laws also discloses to us no
provision whatever in relation to awarding loans or ad-
vances to members upon a bidding of premium therefor, or,
in default of bidders, awarding the money in the treasury
to a member at a minimum premium; nor does the bond
and deed of trust show that the advance was awarded plaintiff
by that method. A minimum premium, and the mode of
making the award, were not fixed by the by-laws; nor was
there any provision for selling to the stockholders the money
by bidding the highest premium, profit or bonus for the
priority of right therefor.

It is insisted by plaintiff that this failure to definitely state
the amount of premium exacted, and to provide for com-
petitive bidding of premium for priority of right to loans,
was in conflict with our statute by which a premium charged
by a building and loan association is exempted from being
usury, and that the by-laws and contract did not come within
the defined requirements in said statute so as to entitle the
contract to such exemption.

Our legislature has deemed it well to encourage the for-
mation of building and loan associations for the pur-
pose of encouraging industry, frugality and home build-
ing, and saving among the members, and has exempted
them from the usury laws as to the profit, taken to the
general fund belonging to the members, for the use of
money therefrom by a member. It has given them certain

and defined powers, to be exercised in the promotion of said objects, and as tending to equality among the members, the safety and security of the mutual funds, and the advancement of the correct principles that should obtain in such enterprises. True building and loan associations, founded and conducted upon proven principles of such financing, are most worthy of such recognition as has been given them in this state by the law-makers; but, in order that only such principles should be invoked in their formation and operation, our law has jealously delegated to them only such powers as are believed to relate to their true purpose and propriety. If formed and conducted for the purposes expressed in the law, exercising the powers therein granted, and complying with the rules thereof, a building and loan association doing business in this state is entitled to exemption from the usury laws; otherwise, it is not. It must render something for such exemption; and that which it must so render is the benefit to its members, and through them to the community, in the promotion of the true objects of such associations as viewed by the public and expressed through the law-makers.

Let us see. What is our law? It is sections 25 to 29 inclusive, chapter 54, of the Code; section 26 of which is as follows: "Every such association shall have the power to provide by its by-laws for selling to the stockholders, who shall bid the highest premium therefor, the money in the treasury, or in default of bidders at or above a minimum premium, may award to a member the value of any shares held by him less such minimum premium; the minimum premium, and the mode of making the award to be fixed by the by-laws. Or such association may charge and receive the premium bid by a stockholder for the priority of right to such loans, in periodical installments; but the by-laws of every association shall set forth whether the premium bid for the prior right to a loan shall be deducted therefrom in advance, or be paid in periodical installments. But whether the premium be deducted from the loan, or paid in periodical installments, the transaction shall not be deemed usurious, although any and all the dues, fines, premiums and interest, shall exceed the legal rate of interest on the amount of money received by the stockholders." And this, and its

accompanying sections, are ended by section 29 in the following words: "Every such association shall adopt by-laws, which shall embrace all the provisions of the four preceding sections, and such further provisions for its government and the management of its business, not inconsistent with these sections, as it may deem proper."

By this law must the said transaction be governed, notwithstanding the domicile of the defendant company was without the state, and notwithstanding it is claimed that the contract was a Virginia contract because the payments were there to be made. *Floyd* v. *National Loan & Inv. Co.*, 49 W. Va. 327.

This Court has held, repeatedly, that this statute requires that the premium be a definite sum, whether payable as a lump sum or in periodical installments, and that the member must know, if the premium is payable in such installments, when such payments are to end, so that he may calculate the aggregate sum of the same; and that, if a definite time is fixed after which no more stated installments of premium are to be made, it is a compliance with the law. *Brown* v. *Rockey*, 60 W. Va. 268; *Tahaney* v. *Washington Nat. B. & L. Assn.*, 59 W. Va. 296; *Thompson* v. *Nat. Mut. B. & L. Assn.*, 57 W. Va. 551; *Prince* v. *Holston Nat. B. & L. Assn.*, 55 W. Va. 19; *Gray* v. *Balt. B. & L. Assn.*, 48 W. Va. 164; and other cases.

Whether, in the case before us, the premium or profit charged was a sufficiently definite sum, as provided in said by-laws and set forth in said contract and deed of trust, we do not deem important, in view of the conclusion we reach. Another observation merits precedence over this, and precludes the necessity of its consideration.

There was no selling of the money in the treasury to the stockholders, and no provision for the bidding of premium or an amount of profit without that name. There was, if anything of the kind, a fixed premium, or a fixed and limited amount of profit to be paid by members for advances; but our law does not provide for a fixed premium or profit. It has chosen the method of competitive bidding, and provides for none other, except in default of bidders. It fixes this bidding as a method of determining priority of right

to loans from the common fund. Its theory and terms are that such method is to be pursued in the proper and equitable conduct of these associations. The member bidding the highest premium is given the right of priority to the mutual funds, or, in default of bidders at or above a minimum premium fixed by the by-laws, the money may be awarded to a member at such minimum premium. If more than one member desires the money, there must be bidding of profit to the association for priority of right to it. And this method of competitive bidding for priority of right to the fund is plainly made applicable to premium bid· that by the by-laws is payable in periodical installments, as well as to premium bid that is to be deducted in a lump sum from the loan. Note the word "bid" and the prevalent idea of "bidding" throughout the statute. This statute simply embodies that which has been long recognized to be the true and proper conduct of these associations, and is in complete accord with the highest authority as to correct principles to be applied to them. In Endlich on Building Associations, section 409, the very theory of our statute is laid down in the text as follows: "The premium which is to be paid by any member, upon an advancement made to him by the society, must be fixed by free and open competition between all the applicants, and in no other way. It is the price to be paid for obtaining preference before other members who may desire the same loan, and at the same time a compensation to them indirectly for the disappointment and postponement which falls to their lot. There can, then, be only one proper method of getting at the exact amount, which, in fairness and equity, a borrower should, at any given time, be required to pay, viz., by competion. If no other person wants the money, or if, among these who would take it, there is none to whom the precedence of another causes any appreciable inconvenience, there is little for which the borrower is bound to offer compensation, and the premium must be trifling, unless positive injustice is to be done him. On the other hand, if there are many who desire the advancement, and if the prospect of obtaining it appears. to them worth a considerable sacrifice, then he to whom the. loan was most necessary and advantageous, and who has. therefore bid the highest, has but done his duty towards.

the other applicants in agreeing to a signal concession, and has nothing to complain of if the premium is rather oppressive. Hence a premium, in order to be lawful, must be one bid for the right of precedence in taking a loan, at a competitive sale of such right; and where there was no such sale and no bid, there can be no lawful premium."

In contravention of this method established by our statute, the association with which plaintiff dealt provided for no such priority of right between members, accepted no such plan as being beneficial and proper in the conduct of such an association, but, on the contrary, adopted the plan that "each application shall be numbered in the order of its receipt by the secretary, and when two or more are made at the same time they shall take precedence in order of their receipt, other things being equal; provided, however, that those having the best security shall be given the preference." Thus one member could be readily favored to the exclusion of another, something against which our statute jealously guards. The whole scheme of this association in the particular of fixing a premium and determining the right of priority to loans is clearly repugnant to the policy of our legislation. It contravenes that which our statute deemed equitable and beneficial; and, by so contravening our law, it is put without the pale of that same statute wherein is the exemption from usury. This association, viewed by our law, in this particular is not a building and loan association, such as practices the beneficent features which that law has prescribed, and for the practicing of which there is given the right to take for the use of money more than the legal rate of interest. Therefore, the contract between plaintiff and the association was usurious, and, to the extent of the usury, is not enforcible in this state, "because it is such a contract as is clearly repugnant to the public policy of the state, plainly written in its legislation, and therefore prohibited as to all building associations." *Floyd* v. *Nat. Loan & Inv. Co., supra.*

Most similar to our statute was the one involved in *Bates* v. *People's Savings & Loan Assn.,* 42 Oh. St. 655, where the court makes the following comment, directly applicable here: "The premium named in the note is unlike the pre-

mium named in the statute. It was not measured or ascertained by competitive bidding among the members and depositors, as we understand the statute to require. It was, in fact, a part of the price named by the lender to be paid by the borrower for the use of the money loaned. The assent of the borrower to pay the price required did not make him a bidder within the meaning of this statute. Calling the excess above the highest legal rate a *premium* did not change the nature of the transaction. It was usurious." In *McCauley* v. *Workingman's Building & Saving Assn.*, (Tenn.) 35 L. R. A. 244, it was held: "The taking of a fixed premium for a loan by a building association is forbidden by a statute providing that the loan shall be to the highest bidder." And to the same effect is the great weight of American authority. *Brown* v. *Archer,* 62 Mo. App. 277; *Bechtel* v. *Saginaw B. & L. Assn.*, (Mich.) 107 N. W. 695; *Dare* v. *Guar. Sav. & Loan Assn.*, (Or.) 81 Pac. 565; *Stiles' App.*, 95 Pa. 122; *Douglass* v. *Kavanaugh*, 90 Fed. 373; *Land Title & Trust Co.* v. *Fulmer*, 24 Pa. Sup. Ct. 256; *Clarke* v. *Conners*, (S. D.) 101 N. W. 883; *Assets Real. Co.* v. *Wightman*, 105 Ill. App. 618; *Jameson* v. *Jurgens*, 195 Ill. 86; *McDonnell* v. *De Soto Sav. & Loan Assn.* 175 Mo. 250; *Mut. Home & Sav. Assn.* v. *Worz*, 67 Kan. 506; *Iowa Sav. & Loan Assn.* v. *Heidt*, 107 Ia. 297, (43 L. R. A. 689); *Post* v. *Mech. B. & L. Assn.*, (Tenn.) 34 L. R. A. 201; *Skinner* v. *South. Home B. & L. Assn.*, (Fla.) 35 So. 67; 3 Current Law 567; 5 *Id.* 482; 7 Thomp. on Corp. 8778-80; 4 Am. & Eng. Enc. 1069-70.

Upon this subject, Thompson on Building Associations, section 188, says: "The manner of charging the premium by auction of money is the one usually contemplated by the statute, and is more in harmony with the general scheme. The power of determining its cost is thus placed with the borrowers themselves, and the managers can not impose upon them an arbitrary rate. If the statute shows that this method was the one intended by the legislature, the courts require compliance with it."

And in *Floyd* v. *Nat. Loan & Inv. Co.*, *supra*, this Court recognized the principle that strict compliance with the statute by these associations is essential to the exemption from usury. At page 343, the opinion says: "The care which the legislature has taken to state explicitly the plan upon

which such associations may operate, and the means it has adopted to compel adherence to it, indicate that the law-making power of the state deems it important. The law relating to the subject of building associations is contained in four sections of the chapter, followed by these words: 'Every such association shall adopt by-laws, which shall embrace all the provisions, of the four preceding sections, and such further provisions for its government and the management of its business, not inconsistent with these sections, as it may deem proper.' No departure from the method of doing business thus prescribed is allowed. There can be no question as to the legislative intent to compel absolute adherence and obedience to its plan for conducting the operations of these societies."

It is contended, however, on behalf of the defendant company, that, conceding the original contract to be usurious, as we now hold, the renewal of the debt thereunder by the notes aforesaid made an entirely new contract which was free from the usury. We can not so hold. As stated by JUDGE SNYDER in *Hess v. Dille*, 23 W. Va. 90: "The doctrine is well settled, both in Virginia and this state, that the giving of a new note for a previous one, which has become due, will not be regarded as an absolute payment or extinguishment of the precedent note or pre-existing debt, unless it be expressly so agreed, whether the new note was that of one previously bound or of a stranger." The whole of the same debt, the exact amount claimed, a part of which was usurious, was simply put into another form, and evidenced and secured by new papers, changing, between the same parties, only the amount and character of the monthly payments. The correspondence between plaintiff, his attorney, and those representing the defendant company, calls it a "change" and so it was. They gave it the proper construction. It was a renewal of the usurious contract between the same parties—nothing more. "A renewal of the usurious contract between the same parties partakes of the infirmity of the original agreement." Webb on Usury, section 312. "The original taint attaches to all consecutive obligations or securities growing out of the original vicious transaction, and none of the descendant obligations, however remote, can be free from it, if the descent can be traced." *Dunning*

v. *Merrlll*, 1 Clark's Chy. 252.  "A mere change of securities for the same usurious loan, to the same person who reserved the usury, does not purge the original consideration; and whether the new security is in renewal of the former evidences of debt, or in payment of the debt tainted with usury, the original taint remains until a new consideration intervenes." *King* v. *Perry Ins. & Trust Co.*, 57 Ala. 118. This doctrine is uniformly sanctioned.  21 Am. & Eng. Enc. 665; 29 *Id.* 517.  It has received recognition by this Court. *Crim* v. *Post*, 41 W. Va. 397.  These new notes included an usurious amount for which plaintiff is entitled to be credited on what he legally owes of the original debt.  *Reger* v. *O'Neal*, 33 W. Va. 159.

The plaintiff counter assigns as error the refusal of the court to declare the said notes absolutely void, upon the ground that they were executed and payable in the state of New York, and were contracts governed by the law of that state, by which law, pleaded and proved in this cause, notes and other cantracts whereby there shall be reserved or taken, or secured or agreed to be reserved or taken, any greater sum, or greater value, for the loan or forbearance of any money, than six per cent, shall be void.  But it must be remembered that this usurious debt did not originate in the state of New York, in which state new evidences in the form of said notes were given for it.  The usury not being conceived there, the law of this forum, where the original usurious contract is in question as being in violation of our law, is proper to apply.  The contract containing such usury was not made there; it was simply "changed". there.  These notes are only usurious because of the usury in the original contract for which they are a renewal.  The usury was in the inception of the transaction, not in the execution of the notes in the state of New York, or the contract for their payment there.  The notes there executed covered the identical usurious amount that the company claimed from plaintiff, as contracted elsewhere than in that state, and were not a novation, but were simply the residue of the original debt put in another shape and secured by the same real estate. This suit calls in question said original contract by which the usury was conceived, not the renewal contract, as being violative of our law, and by such law it is proper to meas-

ure it, even in its renewed form. By such law it will be enforced after it is purged of that which is in conflict with that law, the usury. While it is uniformly held that "a void contract remains void everywhere," yet it must be kept in mind that, as far as it is made to appear in this litigation, the usurious contract in question was not, in its inception, wholly void. This suit strikes at the very inception of the contract into which usury entered, but which was not wholly void on that account. Only by doing so can it involve the notes as usurious. It is the debt itself at which we must look, and which we must keep in mind, not the papers evidencing it. This being true, surely the mere change or renewal of the debt in the state of New York did not wholly invalidate that which in its inception was not wholly void. It remained the same debt, we have held herein, and therefore retained, along with the taint of usury, such good qualities as it originally had. True, the *lex loci contractus* governs as to the validity of a contract. But, as we have shown, the *locus contractus* of this usurious debt was not in the state of New York. The law of that state does not, therefore, govern in relation to it herein. In this view we are supported by the decision in *Bowman* v. *Miller*, 25 Grat. 331. It is directly in point. There it was held, reducing the point of the syllabus to the few words by which it is stated in the Michie Encyclopedic Digest, Vol. 3, page 110: "Where a new note is taken for the balance due on an old note, made and endorsed by the same parties as were on the old, this note not being considered a novation of the old note is to be governed by the same law, even though entered into and made payable in another state."

The circuit court properly excluded this usury from the claimed indebtedness, finding " that the defendant company is entitled only to the amount of the balance on said original loan treated as a straight loan at six per cent per annum interest, after giving the plaintiff credit for all payments made by him as of the times they were severally made, computed upon the rule of partial payments," and correctly decreed accordingly. *Miller* v. *Monumental S. & L. Assn.*, 57 W. Va. 437, Syl. 1.

There is no error, and the decrees are affirmed.

*Affirmed.*

POFFENBARGER, JUDGE, (concurring:)

Out of deference to the great weight of judicial opinion and authority, I concur in this decision, for the sole reason that the by-laws of the association do not conform to the statutory regulation which, the courts generally say, was intended to give members the privilege of competing for the right of preference in respect to loans; but I do not wish to be understood as saying competitive bidding is compulsory, and that the loans of an association whose members all see fit to bid the minimum premium and no more, and await their turns to obtain loans at such bids, are usurious and void as building association loans. The equity and fairness of the uniform premium is so apparent that I am not prepared to say that the legislature intended to forbid it. At the same time, the statute seems to express intention to give every member of an association the right to put in a competitive bid for any loan it may be able to make, and to require this right to be secured by provision therefor in the by-laws. In failing to adopt such a by-law, this association has ignored the requirement and put itself technically without the pale of building and loan association law.