# CHARLESTON.

### WILLIAM JANES *v.* MONA BURGESS FELTON

### (No. 5134.)

Submitted March 24, 1925.　Decided September 8, 1925.

1. WITNESSES—*Testimony of Party to Agreement With Deceased Person Held Competent in Rebuttal, Denial, or Explanation of Testimony of Administratix of Deceased As to Such Transaction.*

   Section 23, chapter 130 of the Code, applied.　(p. 411.)

2. CONTRACTS—*Any Benefit Resulting to Party Promising by Act of Promisee is Ordinarily Sufficient Consideration for Promise; Value of Consideration Need Not Equal Obligation Incurred.*

   Any benefit resulting to the party promising by the act of the promisee is ordinarily a sufficient consideration for

the promise, and it is not essential to the validity of the contract that the pecuniary value of the benefit should equal that of the obligation incurred.   (p. 413.)

3.   USURY—*When Contract is Usurious, Stated; "Usurious Contract."*

A contract is usurious when any premium, profit, bonus, or charge is exacted or required by the lender in excess of the money actually loaned, which in addition to the interest stipulated, renders the return to the lender greater than the lawful rate of interest.   (p. 414.)

4.   SAME—*Profit to Lender Which Renders Contract Usurious May be Assumption by Borrower of Payment of Debt to Lender of Insolvent Third Person, Which Borrower is Not Obligated to Pay.*

The profit to the lender which renders a contract usurious may be the assumption by the borrower of the payment of a debt to the lender of an insolvent third person, which the borrower is under no obligation to pay.   (p. 415.)

5.   SAME—*Debtor Cannot Validate Usurious Contract Either by Ratification or Estoppel.*

A debtor cannot validate a usurious contract, either by ratification or estoppel.   (p. 417.)

Appeal from Circuit Court, Barbour County.

General creditors' suit by William Janes against Mona Burgess Felton, formerly Mona M. Burgess, in which Mrs. Jennie Canter Woods, administratrix of J. Hop. Woods, deceased, sought to collect a note executed by defendant to her intestate.   From a decree sustaining defendant's denial of liability as to part of note, Mrs. Jennie Canter Woods appeals.

*Affirmed.*

*Harry H. Byrer* and *Samuel V. Woods,* for appellant.
*George & Wilcox,* for appellee Felton.

HATCHER, JUDGE:

In a general creditors suit brought against the defendant Mona Burgess Felton, formerly Mona M. Burgess, in the circuit court of Barbour County, Mrs. Jennie Canter Woods,

administratrix of J. Hop. Woods, deceased, sought to collect a note executed by the defendant on the 3rd day of September, 1912, to J. Hop. Woods, for the sum of $2,933.96. This note, with its accrued interest, amounted on October 1st, 1923, the date of the decree herein, to the sum of $3,367.20. The defendant admitted liability on the note to the administratrix in the sum of $2,417.25, as of the date of the decree, but resisted payment of the balance claimed. From a decree sustaining the contention of the defendant, Mrs. Woods has appealed.

A memo in writing, dated September 3rd, 1913, signed by J. Hop. Woods and Mona M. Burgess, was filed by Mrs. Woods as a part of her deposition, and is as follows:

"It is mutually agreed between J. Hop. Woods, and Mona M. Burgess, that the obligation of $2,-000.00 secured to said Woods by a Deed of Trust of this date executed by said Burgess (single) to Harry H. Byrer, Trustee, is made up of the following four items and the consideration hereinafter mentioned, namely:

First: The sum of $1,000.00 secured to Cora M. Peck by said Burgess, under a deed of trust executed by her to one A. S. Poling, Trustee, dated the 4th day of July, 1908, and recorded in the Clerk's Office of the County Court of Barbour County, in Trust Book 1, page 447, which sum the said Woods has assumed and when paid is entitled to have the said trust assigned to him, or released.

Second: The sum of $536.93, being the amount, at this date, of a certain judgment for $311.77, with interest thereon from the 6th day of November, 1901, and $2.10 costs, rendered on that day by Wm. G. Keys, a Justice of Philippi District, in said County, in favor of said Woods, against J. M. Burgess, now deceased, but then the husband of said Mona M. Burgess, which judgment is docketed in the Judgment Lien Docket of said office in Book No. 4, page 82, as of said date, and upon which execution issued on the 30th day of January, 1906, and was returned "Not executed," and docketed in said office in Execution Docket, on page 76, on February 2nd, 1906, before the death of said decedent, and which judgment and execution have this day been assigned by said Woods to said

Mona M. Burgess, who has assumed the payment thereof for and in consideration of certain good and valuable consideration this day passing from said Woods to said Mona M. Burgess, but without recourse upon said Woods or his estate.

Third: The sum of $27.31 being the amount of a judgment at this date, for $15.00 with interest thereon from the 28th day of April, 1902, and $2.10 costs, rendered on that day by said Justice, Wm. G. Keys, in favor of said Woods, against Olivia Burgess, the step-mother of said J. M. Burgess, (not docketed) this day assigned by said Woods to said Mona M. Burgess, who has assumed the payment thereof, for and in consideration of certain good and valuable considerations this day passing from said Woods to Mona M. Burgess, but without recourse upon said Woods, or his estate.

And, the check of said Woods to said Mona M. Burgess, upon the Peoples Bank of Philippi, for $435.76.

Witness our hands and seals this 3rd day of September, 1913, to duplicates hereof.

J. Hop. Woods    (Seal)
Mona M. Burgess    (Seal)

Mrs. Felton admitted in her deposition that the memo correctly stated the true consideration for the note of $2,000.00. The note for $2,933.96 upon which suit was brought, was the last renewal of the one for $2,000.00, with its accumulated interest. Mrs. Felton stated that shortly before the loan, she employed Mr. Woods, who was an attorney at law, to help her about getting a lien on her property released, and that he was her attorney on September 3rd, 1913. She further testified that neither J. M. Burgess, nor Olivia Burgess, the parties referred to in the memo, owned any property whatsoever at the time of their respective deaths. In a separate deed of trust executed by Mrs. Felton September 3rd, 1920, to secure another party in another transaction, reference is made to her "obligation" to Mr. Woods. Mr. Woods died in the latter part of 1921.

The Commissioner found in favor of Mrs. Woods for the entire amount of her claim, but the circuit court sustained exceptions to the Commissioner's report as to the two items

of $536.23, and of $27.30, being the second and third items respectively mentioned in the memo of September 3rd, 1913. These two items, with their accrued interest, amount at the date of the decree to $949.95.

Counsel for Mrs. Woods take the position, (1) that her testimony was incompetent under section 23, chapter 130 of the Code, and being incompetent, did not render competent the evidence of Mrs. Felton, citing *Kimmel* v. *Shroyer,* 28 W. Va. 506; and, (2), that by reason of the many renewals of her notes, and of the recognition in the deed of trust of 1920 of the debt she owed Mr. Woods, as well as by her long delay, Mrs. Felton ratified the original transaction, and is now estopped from making her defense thereto. *Pusey* v. *Gardner,* 21 W. Va. 469, and other cases are cited, holding that equity generally refuses relief where a party has slept on his rights, and acquiesced for a great length of time.

No valid reason is advanced or perceived why Mrs. Woods could not file as a part of her deposition, the memo. in writing of the transaction of September 3rd, 1913, signed at the time by the parties thereto. The administratrix having given evidence as to that transaction, the evidence of the defendant was thereby made competent under section 23 of chapter 130 of the Code; provided, as Judge SNYDER held in *Kimmel* v. *Shroyer, supra,* her testimony was "confined to a rebuttal, denial or explanation" of the testimony of the executrix. Mrs. Felton did not rebut or deny the memo., but confirmed the statements therein. She testified, however, that Mr. Woods at the time he took her note for $2,000.00, made it a condition for the loan of $1,500.00 that she was to assume the payment of the $500.00 owed him by her deceased husband. This statement was admissible as an explanation of the circumstances surrounding the making of the contract.

The administratrix offered no evidence relative to the employment of Mr. Woods as attorney by defendant. This employment was a separate transaction from the one of September 3rd, 1913, and therefore, the evidence of Mrs. Felton in regard thereto was not admissible, and cannot now be considered.

Her testimony that neither J. M. nor Olivia Burgess owned any property at the time of their respective deaths was not evidence of any *transaction* or *communication* with Mr. Woods; consequently, it is not prohibited by section 23, chapter 130 of the Code.

The charge of laches is not sustained by the facts in this case. The law did not require defendant to present her defense until an attempt was made to collect the note. There has been no change in the condition of the parties by reason of her delay that works a disadvantage to the estate of Mr. Woods. It has not suffered from the loss of evidence or the intervention of equities and other causes. Our determination of the case is based on what transpired on September 3rd, 1913, as recorded at the time by Mr. Woods himself. *Browning* v. *Browning,* 85 W. Va. 46

The defendant's brief charges the contract of September 3rd, 1913, with fraud, failure of consideration, and usury. Fraud is not pleaded or proven. Upon the exclusion of defendant's testimony as to the employment of Mr. Woods as her attorney, there remains no evidence in the case of confidential relationship or undue influence.

Failure of consideration is claimed on the theory that the J. M. and Olivia Burgess judgments were worthless, the defendant was under no legal obligation to pay them and her assumption thereof was therefore voluntary. If the assignment of these judgments to the defendant, and her assumption of their payment had been all of the transaction of September 3rd, 1913, ample support for that theory could be found, both in reason and authority. *Maull* v. *Vaughn,* 45 Ala. 134, holds that a note given by the widow of a judgment debtor, in satisfaction of the judgment, is without consideration and void, where the judgment debtor left no property which could have been subjected to the payment of the judgment. *Sykes* v. *Moore,* 115 Miss. 508, 76 So. 538, also holds that a note given by a widow for the debt of her husband, who died insolvent, was without consideration where the creditor did not release his claim. The gist of the reasoning in the Mississippi case is that there was "neither benefit to the

widow nor any substantial forbearance by the creditor." The opinion indicates that had either appeared, the case would have been *different.*

The assumption of the payment of these judgments, however, does not stand alone. Their assumption was the prerequisite to the loan of $1,435.76 in actual money. It was only by agreeing to pay these judgments that she secured the loan. Mr. Woods' attitude in regard to the loan and the J. M. Burgess judgment, as stated by defendant, was: "He said he would not loan me the money unless I would assume it. Emphatically no." The defendant's position in regard thereto as expressed by her, was: "I agreed to assume it if he would loan me this much money."

The test of whether she received a valuable consideration for assuming payment of the judgment is, did she receive *any benefit* thereby? "Benefit to be derived by each party to a contract furnishes sufficient consideration for it." *Rowan and Co.* v. *Hull*, 55 W. Va. 335. "Benefit," as stated by Judge BRANNON in the opinion, "* * * fills in the fullest the demand of the law as to consideration." At the time of the loan, the defendant was in sore financial distress. She was being pressed for payment of $1,000.00 to secure which a lien was held against her property. She was very anxious to save her property from a forced sale. Its value in 1913 is not given, but it was evidently much greater than $1,-000.00. It was presumably worth more than the money actually loaned defendant by Mr. Woods. It was valued so highly by defendant that she was willing to assume the payment of the two judgments amounting to $564.24 as a bonus, for a loan to release it from the Peck lien. She could not get the loan on any terms other than those offered by Mr. Woods. As stated by her: "It was my only way out."

The only difference between this loan and the ordinary loan of money, is that in this case instead of agreeing to pay merely the legal rate of interest for the loan, the defendant agreed to pay therefor the legal interest, plus the sum of the two judgments. Had she been required to pay only legal interest, would anyone question the *benefit* to her from the loan? The effect of the loan in saving her property from

sacrifice was the same, no matter what the loan cost her. It is true that the *quantum* of benefit was lessened by the large bonus paid for the loan; but the adequacy of the benefit is left to her. The terms of the loan were evidently exorbitant, yet they were the result of the free exercise of defendant's judgment. She understood fully the offer of Mr. Woods and she received exactly what she bargained for. The law conceded to her the right to make her own contract, *if lawful*, and will not now determine whether her bargain then was wise or unwise. The law does not permit a comparison of the pecuniary value of the benefit received with that of the obligation incurred. The court does not scan the transaction as a trader—it does not sit at the table of the moneychangers. The validity of defendant's obligation did not depend on the benefit to her from the loan being equal in value to the full amount of the note. It sufficed at law if she was benefitted by the loan, even though the benefit was slight.

> "It is an elementary principle that the law will not enter into an inquiry as to the adequacy of the consideration. This rule is almost as old as the law of consideration itself. Therefore anything which fulfills the requirements of consideration will support a promise whatever may be the comparative value of the consideration and of the thing promised."

Williston on Contracts, par. 115.

> "Any benefit resulting to the party promising, by the act of the promisee is a sufficient consideration, and it is not essential that there should be any adequacy in point of actual value, but a slight benefit will be sufficient."

*Byrne* v. *Cumming*, 41 Miss. 192.
*Furman University* v. *Waller et al*, (S. C.) 117 S. E. 356.
*DeRemer* v. *Anderson*, 41 Nev. 287, 169 Pac. 737; 25 A. L. R. 775.
*Conover* v. *Stillwell*, 34 N. J. L. 54.

*Bolling* v. *Munchus*, 65 Ala. 558.
3 R. C. L. par. 127, p. 932.
6 Am. & Eng. Ency. Law, par V. p. 694.

The loan of this money which prevented a sacrifice of defendant's property at that time, was obviously a substantial benefit to her. This fact precludes the contention that her obligation fails of consideration, *pro tanto*.

By exacting from defendant, however, a promise to pay the two judgments, in addition to paying legal interest as a return for the loan, Mr. Woods rendered the contract usurious and unlawful. It is well settled law that a contract is usurious when any premium, profit, bonus, or charge, exacted or required by the lender in excess of the money actually loaned which, in addition to the interest stipulated, renders the return to the lender greater than the lawful rate of interest.

> "When such premium or profit—is greater than the legal rate of interest, the contract respecting the advance is usurious."

*Miller* v. *Banking & Trust Co.* 63 W. Va. 107.

> "Where there is an intent on the part of a lender to obtain something more than lawful interest for a loan, and the transaction is such that he may do so, it is usurious."

*Miller* v. *Life Ins. Co.* (N. C.) 24 S. E. 484.
29 Am. & Eng. Ency. of Law, 494.

The *profit* to the lender which renders a contract usurious may be and frequently is the assumption by the borrower of the payment of a debt to the lender of an insolvent third person, which the borrower is under no obligation to pay.

> "Where a lender requires, as a condition precedent to making a loan upon which the full legal rate of interest is expressly charged, that the borrower shall assume and pay off a promissory note held by the lender against one who is known by the lender to be insolvent, and whose debt the borrower is under no obligation to pay, the transaction is usurious."

*Bishop* v. *Exchange Bank,* (Ga.) 41 S. E. 43.

By reason of the large citation of authority in the above case, we quote at length from the opinion:

"The books are full of cases showing various schemes and devices of this sort to evade the usury laws of the country. In 27 Am. & Eng. Enc. Law, .1023, it is said: 'Where, on an application for a loan of money, the lender requires, as a condition of making the loan, that the borrower shall buy something of him at an exorbitant price, and particularly where the borrower does not need or want the property offered, the transaction becomes thereby marked as a cover for usury.' In *Schober* v. *Hauser,* 20 N. C. 222, 238, Judge Gaston said, in discussing this subject, that 'a requisition by the lender of the borrower, as a condition of the loan, to take up the notes of an insolvent man, or one in doubtful circumstances, would *per se* be usury, in law.' In *Douglas* v. *McChesney,* 2 Rand. 109, the court held 'that a tacit understanding between the parties, founded on a known practice of the lender to lend money at legal interest if the borrower purchased of him a horse at an unreasonable price, would be a shift to evade the statute against usury.' In *Low* v. *Mussey's Estate,* 36 Vt. 183, it was held that a sale of property to a borrower, in connection with a loan, at a price much greater than its value, of which both parties were aware, although nothing was said as to its real value, was a usurious transaction. In *Hathaway* v. *Hagan,* 59 Vt. 75, 8 Atl. 678, one of the items of the consideration for the note sued on, which was an extension of other notes, was about $70, as the price of a sleigh shown to have been worth about $5. In delivering the opinion of the court, Rowell, J., said: 'The defendant did not want the sleigh, and had no use for it; but the orator took advantage of his situation, and compelled him to buy it at fifteen times its value, in order to get an extension on his notes, which were then in the hands of an attorney for collection. These circumstances make that transaction usurious,—notwithstanding the subterfuge of a sale resorted to to cover it; for the law is quick to discern the intents of men, and piercing, even to the dividing of the joints and marrow of sham and pretense.' In *Earnest* v. *Hoskins,* 100 Pa. 551, it was held: 'Where a lender of money exacts as a condition of the loan that the borrower shall purchase of him a piece of land at an exorbitant price, the transaction is usurious.'

In *Campion* v. *Kille,* 14 N. J. Eq. 232, the general rule was stated as follows: 'In the construction of the statute against usury, the courts have held, with undeviating uniformity, that, where the real transaction was a loan of money, no shift could evade the statute. No matter under what guise the loan was concealed.—whether by sale of goods, transfer of stock, taking bond for larger amount than loaned, passing off depreciated paper, or by any other expedient,—the court will strip off the guise, and ascertain the true nature of the transaction.' See, also, Webb, Usury, par. 66-69; *Bank* v.*Owens,* 2 Pet. 526, 7 L. Ed. 508, and annotations thereon in 2 Notes U. S. Rep. 368; *Banking Co.* v. *Hagan,* 1 La. Ann. 62, 68; *Morgan* v. *Schermerhorn,* 1 Paige 544, 19 Am. Dec. 449.''

"A surety in a bond who had given a deed of trust to secure the debt, executes another deed of trust, to secure another debt of his principal, due to the same parties, in consideration of the forbearance of the creditors to sell under the first deed. Held: The second deed is given upon a usurious consideration, and is, therefore, void.''

*Hopkins* v. *Koonce,* 6 Gratt. 387.

Other cases could be cited in support of this proposition, but further cumulation of authorities thereon seems unnecessary.

The original note of $2,000.00 having been tainted with usury, it follows that all the renewals thereof are likewise usurious. Usury cannot be ratified by the renewal of the usurious note.

"A renewal of an usurious contract, between the same parties, partakes of the infirmity of the original agreement, and the original taint attaches to all consecutive obligations or securities growing out of the original vicious transaction.''

*Miller* v. *Banking & Trust Co.,* 63 W. Va. 107.

"A mere renewal of a note between the original parties, the rights of bona fide purchasers not being involved, and there being no reformation of the contract, except an agreement to extend the loan at the legal rate of interest, and no restitu-

tion of the usurious interest previously paid, does not purge the original transaction of the taint of usury.''

*Nicrosi* v. *Walker,* 139 Ala. 369, 37 So. 97.

The acknowledgment of her obligation to Mr. Woods in the trust deed of 1920 does not estop defendant from pleading usury.

> "Parties to a usurious contract can do nothing which will have the effect to validate it so as to deprive the debtor of his right to defend on the ground of usury, except by expunging its usurious element.''

*Norton* v. *Nathanson,* 85 N. J. Eq. 409, 97 Atl. 166.

We therefore hold that the circuit court properly purged the claim of the administratrix of the usury represented by the sum of the two judgments, with the accumulated interest thereon.

Finding no error in the record, the circuit court is affirmed.

*Affirmed.*