SANTIAGO IGLESIAS SILVA, Plaintiff and Appellant, *v.* BANCO DE PONCE, Defendant and Appellee.

No. 7882.   Argued December 15, 1939.—Decided June 12, 1940.

*Cayetano Coll Cuchí* for appellant.   *Vicente Zayas Pizarro* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

One of the questions involved on appeal is the nature of the action. The brief for appellant is signed by an attorney who appeared in the case for the first time at the trial. The complaint had been signed by two other attorneys, one of whom also appeared at the trial. Sometime before the date

of the trial, the district court had overruled a demurrer to the complaint for want of facts sufficient to constitute a cause of action. Later defendant had set up as special defense in its answer that the action was barred by section 1868 of the Civil Code (1930 ed.). This was one of the grounds upon which the district court, after a trial on the merits, based its judgment of dismissal.

Plaintiff alleged in substance that:

In January 1931, Santiago Iglesias Silva applied for and obtained from the defendant bank by giving sufficient security therefor a loan of $100,000. The bank imposed as one of its conditions for the granting of such loan an investment of $20,000 in certain obligations to be designated by the bank, to wit: two promissory notes for $10,000 each to fall due June 30, 1931, one of them signed by Baltazar and Heraclio Mendoza and the other by Baltazar Mendoza and payable to the order of the bank. The bank, when it advised plaintiff to make the said investment, informed him that the said notes were a good and safe investment because the bank was acquainted with Baltazar Mendoza's financial standing. Notwithstanding these representations which were false and fraudulent, the bank knew that the said notes were worthless because the said Baltazar Mendoza was insolvent and all his property was subject to other obligations held by the bank. When the bank advised plaintiff to make the said investment and to acquire the ownership of the said notes which were paid for in cash by plaintiff the said notes were uncollectible and worthless. Plaintiff acquired the ownership of the said notes because he believed the representations made by the bank which assured him that the documents were perfectly good and "solvent" and in so advising the acquisition of the said promissory notes by plaintiff the bank did this for the purpose of defrauding plaintiff in the sum of $20,000, the amount of said notes, for the benefit of the defendant bank which had the said documents classified on its books as uncollectible. The defendant bank's act had caused plaintiff damages in the sum of $20,000 which he paid for the said promissory notes and interest on that amount from February 20, 1931, when the said notes were acquired, to the day on which the complaint was filed.

The complaint was entitled as an action "for the recovery of money and damages." The prayer was for a judgment "condemning the defendant bank to pay plaintiff $20,000 with

interest from February 20, 1931, to the date of such judgment and in addition thereto the costs and expenses of the action.''

Appellant submits that the district court erred:

In holding that the action was barred because from the face of the complaint it appeared that the action was one for damages arising out of the crime of false representation defined by section 470 of the Penal Code (1937 ed.).

In finding that the bank, acting by its manager, Pedro Juan Rosaly, had not been shown to have induced Iglesias Silva to accept the two promissory notes for $10,000 each representing the amount paid by Iglesias Silva for the account of another with whom he had no contractual relationship—an obligation imposed upon him by the bank as the condition of a loan—and that Iglesias Silva's acceptance of the condition imposed had not been shown to have been due to the bank's false and fraudulent representations made with the knowledge that the said promissory notes were worthless.

In holding that the condition imposed upon Iglesias Silva that he would guarantee, as he did guarantee, the sum of $20,000 representing the interest on Baltazar Mendoza's obligation held by the bank was a legitimate condition in addition to the payment of the legal interest agreed upon, without any obligation on the part of the bank to return to Iglesias Silva the said sum of $20,000.

The only authority cited by appellant in support of his second assignment is 26 C.J. 1159, sec. 72. He concedes that for the purposes of his action this assignment is of little or no importance. There was no question about the condition imposed by the bank, but there was no misrepresentation or concealment and the district judge did not err in so finding.

The argument in support of the first assignment is in substance this:

The concept embodied in section 1802 of the Civil Code (1930 ed.) requires as an essential characteristic that the ''fault or negligence'' should not arise out of contract. (12 Manresa, 542, 4th ed.) This is not an action for damages arising out of a quasi-contract because of fault or negligence and the prescriptive period applied by the court was inapplicable. There is great liberality in our system of procedure and the old technicalities have vanished. The plead--

ings and the proof in the instant case show an action to recover the "price" of a contract which was absolutely void because of an illegal consideration. It should be so regarded under sections 122 and 136 of the Code of Civil Procedure. *Sosa* v. *Sosa*, 35 P.R.R. 939; *Irizarry et al.* v. *Bartolomei et al.*, 32 P.R.R. 849; *Cruz* v. *Heirs of Kuinlan*, 29 P.R.R. 817; *Oliver* v. *Oliver*, 23 P.R.R. 168; *Alvarez* v. *Riera*, 20 P.R.R. 308; and *Otero* v. *Mirabal*, 37 P.R.R. 679. The complaint was not drawn with all possible precision and clarity but after the overruling of demurrers for want of facts sufficient to constitute a cause of action, the allowance of amendments to the answer, and the refusal of the district court to permit an amendment of the complaint to conform to the evidence the pleading should be liberally construed in the light of sections 122 and 136 of the Code of Civil Procedure. See: *Juncos Central Co.* v. *Rodríguez*, 16 P.R.R. 286; *Binet* v. *García*, 18 P.R.R. 331; *Neumann* v. *Trujillo et al.*, 24 P.R.R. 284; *Peñagarícano* v. *Peñagarícano*, 19 P.R.R. 472; *Gandía* v. *Trías*, 29 P.R.R. 629.

The gist of the argument in support of the third assignment follows:

It was immaterial for the purposes of the action whether Iglesias Silva had or had not investigated Mendoza's financial condition, either of his own initiative or at the bank's suggestion. If the bank imposed upon him as a condition of the loan, the payment of the $20,000 not owed by him nor germane to the transaction, the contract was void because of the illegality of the consideration irrespective of anything that was done by Iglesias Silva. See *Baylis* v. *Lucas*, 98 Eng. Reprint 995; *United States Bank* v. *Owens*, 27 U. S. 338 (2 Peters 527); 47 Am. St. Rep. 178 (*sic*), Annotation: "Usury. What Transactions are Usurious"; *New Orleans Canal & Banking Co.* v. *Hagan*, 1 La. Ann. 164; *Bishop* v. *Exchange Bank* (Ga.) 41 S. E. 43; *Janes* v. *Felton*, 129 S. E. 482.

At the close of the trial plaintiff requested that he be granted three or four days within which to file an amended complaint according to the result of the evidence. Counsel for defendant suggested that counsel for plaintiff should indicate the form of the amendment so that it might be seen whether or not there was evidence to justify such an amendment. Counsel for plaintiff said that in his opinion the evidence for the defense was not irreconcilable. Plaintiff's

main witness was Mr. Rosaly. The question was a legal one. If the bank could have transacted the business with Iglesias Silva, plaintiff had no cause of action. If the bank could not have legally transacted that business with Iglesias Silva, then the contract was *ultra vires* and Iglesias had a good cause of action. In the circumstances, plaintiff's principal averment, the complaint, had been drawn in accordance with the evidence in plaintiff's possession not only at the time of drawing the complaint but at the commencement of the trial. During the course of the trial, evidence had been adduced disclosing the fact that Mr. Berríos, the agent employed by plaintiff to collect the two documents under certain conditions, had brought suit on one of the notes although without plaintiff's "consent, knowledge and benefit" and in that action had entered into a compromise, which although without benefit to plaintiff could not prejudice the bank, since plaintiff was responsible for the acts of his agent. In view of this evidence, plaintiff desired to amend his complaint in conformity with the evidence so that its averments would be strictly in accord with the facts established by the evidence, that is to say, that on such a date plaintiff applied for this loan; that it was granted on these conditions; that this and that occurred; all in accordance with the evidence adduced by plaintiff and defendant. Then the prayer would be limited to the payment of $14,000 with interest from the corresponding date in each of the two documents. That was what plaintiff's amended complaint would be. Plaintiff had a right to present his amended complaint so that it should appear of record; because if the court refused to permit the amendment and the refusal should be assigned as error it might be a ground for reversal.

Counsel for defendant replied that the fact that defendant had proved that a compromise as to one of the promissory notes destroyed all the bad faith imputed to the bank, placed plaintiff in a position of bad faith and showed that plaintiff, knowing that he had endorsed the notes, and knowing that

one had been collected, did not come with clean hands as did defendant. Plaintiff had testified that three days before the trial, he had knowledge of the suit, knew that it had been settled. It had come first to the knowledge of his attorneys although he did not learn of it until three days before the trial but they had persisted in their claim for $20,000 without any amendment at the time, but defendant had amended his answer and had paid an "express" to look for the documents in order to show defendant's good faith and plaintiff's bad faith; to show beyond a reasonable doubt that those promissory notes had been endorsed to Berríos, who had filed two suits, one of which was still pending and had not been dismissed and another which had been commenced in San Juan and was settled in Guayama for $6,000; and this plaintiff had not been able to disprove. Plaintiff was claiming $20,000 because as he alleged the bank had sold to him two promissory notes in certain condition and then his evidence had shown that Iglesias—not by his agent, for Berríos who was present and was not put on the stand, was not his agent—had endorsed those promissory notes for value received and the instrument introduced in evidence, supplemented by the testimony of Fernández García, showed that the mortgage given in settlement had been executed in favor of Berríos. Why, if the notes had been endorsed to the order of Berríos out of pure friendship, was not the mortgage resulting from the compromise executed in favor of Iglesias? They had not offered the testimony of Berríos because it would have been damaging. They did not wish to appear claiming $20,000 and alleging fraud when it was proven that they had received $6,000 in settlement. They were not endeavoring to conform their averments to their evidence but to defendant's evidence. They had a bad case. There was no reason for a new complaint. If plaintiff was right, the court would render judgment in their favor for $14,000 or $10,000 or for the amount to which they were entitled; but the bank had established its good faith with evidence which is not easily discredited;

the evidence for plaintiff tended to show bad faith on the part of the bank; that it had delivered the notes of an insolvent debtor, knowing that they were not collectible, that the bank had taken from Iglesias Silva's pocket $20,000. Defendant's contention was, and defendant's evidence showed, that this was not so; that Iglesias Silva had endorsed those notes to Berríos for value received and that, as to one of them, $6,000 had been received in settlement. Plaintiff's theory and that of defendant were contradictory; the evidence was different. Hence, defendant's objection to the granting of time or of permission to amend the complaint.

Counsel for plaintiff insisted that the court had no right to impede, nor could defendant object to, the presentation of an amended complaint to conform the allegations to the evidence. After the filing of the complaint, the court, of its own motion or upon defendant's objection, could refuse to admit the amended complaint, but the right to present it could not be denied. Allegations amended at the close of the trial to conform to the evidence are amended because of some element of evidence which was unknown to plaintiff at the time of drawing the complaint and which in some way has altered, modified, diminished or reduced the remedy sought. That was plaintiff's position. Plaintiff was not alleging bad faith on the part of the bank. All that plaintiff alleged was that the bank, in the belief that it could transact certain business, did so. The result was *"un cobro de lo indebido"* and plaintiff should be reimbursed. There was no bad faith. Counsel for plaintiff was not arguing the case on its merits. He was not contrasting the evidence for plaintiff with that for the defense. He was requesting permission to do what he had announced as his desire.

The rest of this incident, as set forth in the stenographic record, follows:

"Attorney Coll Cuchí: If I undertook to amend the allegation, for instance, and I am not saying to the court that this will be final —just as it comes to my mind—the seventh paragraph of the com-

plaint says: 'And the plaintiff also alleges that he became the owner of said promissory notes because he trusted the statement of the defendant, which positively told him that such documents were perfectly good and solvent; and in so advising the plaintiff to buy the said notes the defendant bank sought to defraud the plaintiff in the sum of $20,000 represented by said promissory notes, for the benefit of the defendant bank, which kept such documents under the heading of uncollectible.' According to the evidence. . . .

"Judge: How would the amendment read?

"Attorney Coll Cuchí: Please the Court . . . Please follow me and if I do not make myself clear, interrupt me and I will do so.

"According to the evidence, these promissory notes were delivered by Iglesias Silva to Antonio Berríos; but according to the evidence and to a letter in the possession of the plaintiff—and this is what we knew—Antonio Berríos Berdecía returned to the plaintiff one of the above documents and told him that the other was in the hands of Fernández García. This is what we knew, and in such case we did not have to allege at all our deal with Antonio Berríos because it had become ineffective. But it appears from the evidence that concerning the document to which reference was made in the letter in the possession of Fernández García (1934), an action was instituted by Antonio Berríos Berdecía in the District Court of Guayama which was settled by compromise, to which Santiago Iglesias was not a party, and of which he had absolutely no knowledge.

"And there, in order to make the allegation conform to the evidence, we might add: '8th: That these two documents referred to in the complaint were sought to be collected in various ways, among others, by assigning them, without any value at all, to Mr. So and So for their collection, who returned them on such a date without having collected them, but as it was a fact that the document referred to in the letter in the hands of Fernández García was understood to have been settled by compromise in such action, for which Berríos Berdecía received the sum of $6,000.00, although the plaintiff was wholly unaware of it.'

"This is what would be called making the allegation conform to the evidence. Because, what is the theory? I do not mean to teach or give lessons to anybody. The theory of amending any complaint to make it conform to the evidence can never go beyond the judgment that might be rendered by a court on the actual pleadings. It is a matter of purifying and explaining the proceedings. Without my making such allegation in the complaint, the court may enter

judgment just as if I had made it, because a judge is never compelled to enter judgment in accordance with the prayer of the complaint, because the only thing that is not part of the complaint is the prayer. We have made our present procedure like the Spanish. Your Honor will see that a complaint filed in any court of Puerto Rico, where our Code of Civil Procedure is in force, after stating the facts, closes: 'Wherefore, judgment is pleaded' (*sic*) etc. Your Honor will see that this is the universal practice in the United States . . . the prayer in English: 'wherefore, judgment is pleaded', etc., we have adopted it in our practice and we pray that such a thing be done, and we pray for everything sought to be done. But the prayer is no part of the complaint just as the grounds on which a judgment is based do not operate against the judgment. We wish to file an amended complaint so as to purify the proceedings, and in amending the complaint to make it conform to the evidence, we have already clearly presented the issue to the court.

"Judge: Would such amendment to the complaint be necessary?

"Attorney Coll Cuchí: No.

"Attorney Zayas Pizarro: Then . . .

"Attorney Coll Cuchí: Don't say then . . .

"Attorney Zayas Pizarro: Are you asking me?

"Judge: Mr. Coll.

"Attorney Coll Cuchí: If it were necessary, it would not be proper. The only amendments that are admissible are those for the purpose of making the allegations conform to the evidence where they cannot change the proceedings. In a judgment the court may do that which I am requesting without amending the complaint. But we ask for leave to amend the complaint to make it conform to the evidence so as to make the judgment conform to the allegations, if we are right; and if we are not, that the same be dismissed. Whenever it is sought to amend a complaint to make it conform to the evidence admitted it is an indispensable requisite that the court could enter judgment without the necessity of amending the complaint. This is a matter of form, it is a matter of record.

"Attorney Zayas Pizarro: May we speak now?

"Judge: Yes, you may now.

"Attorney Zayas Pizarro: If this is a formal matter . . .

"Judge: Attorney Zayas Pizarro has the floor.

"Attorney Zayas Pizarro: If it is a formal matter and a matter of record, why then raise this question, why not wait until the last moment for the granting of that to which he is entitled, with-

out raising it? If we can avoid that, if Your Honor has the right to enter a judgment in that way without such amendment, what is the interest of Attorney Coll on behalf of the plaintiff in amending the complaint since Your Honor can grant him that very thing without the necessity of amending? Attorney Coll is a very eloquent speaker; I am not an orator. He said so. But I understand that there are men like Attorney Coll Cuchí whom from personal experience I understand very well. He says now that he wants to amend the complaint and states that such promissory notes as Iglesias Silva endorsed to Antonio Berríos had no value at all, that is, that there was no consideration. And yet both promissory notes state that they were for value received. And the presumption is that there was consideration. Why is it that Mr. Berríos, who is here, has not been produced as a witness and placed on the stand? There is the presumption that he would have testified against them. There is the presumption that the notes in question were endorsed for a consideration, and the testimony of Mr. Iglesias Silva is not sufficient to destroy the presumption of value received. The other party wants to amend his complaint so as to strike out something which troubles him for the purpose of the evidence because the court might dismiss the complaint, and they want to quit that position and adopt a different one. Moreover, he has conceded that the judgment sought by him can be rendered without the necessity of such an amendment. This is why I pray that no time or authority whatever be granted for making such amendment.

"Judge: The court refuses to permit the amendments; the court thinks that it can decide the case without the necessity of amending the complaint, of admitting an amended complaint, in accordance with the result of the evidence on both sides.

"How long then do you want for argument? How is it to be done?

"Attorney Coll Cuchí: I pray the court to consent to the request of my colleague in this respect.

"Attorney Zayas Pizarro: As my colleague is the party who complains, he may have until May 5th.

"Judge: Is the question submitted on briefs?

"Attorney Coll Cuchí: Yes, sir.

"Judge: How long do you need?

"Attorney Coll Cuchí: Until May 5th. Will the stenographer please read my last statements?

"(The stenographer reads the statements of Attorney Coll which, appear on page 337, and the order of the court which appears on. page 339.)

"Attorney Coll Cuchí: I understand . . .

"Judge: I am going to repeat my ruling so that it will be clearly understood. The court overrules the motion of the plaintiff for leave to file an amended complaint to conform its allegations to the evidence submitted in the case, because, in the opinion of the court, without the filing of such amended complaint, it can dispose of the case, examine the evidence submitted on both sides, and render judgment. That is all. The last is the Court's deliberate statement.

"Attorney Coll Cuchí: In this way we accept the ruling."

Some six weeks later, after plaintiff had filed his brief, defendant moved for a reopening of the case, and for leave to amend its answer by inserting therein—in addition to the special defense that the action was barred by section 1868 of the Civil Code—a reference to section 5 of "An Act to fix a legal rate of interest on all obligations," as amended in 1903 and 1907 (Comp. Stat. 1911, sec. 4176), and an averment to the effect that any claim for the return of money under the said act was barred because the action had not been brought within one year from the date of payment. From this motion it appears that the demurrer overruled by the court before the filing of defendant's answer was based upon the ground, among others, that the complaint did not state a cause of action for rescission because it did not allege the rate of interest on the loan nor the time during which such interest had been paid, in order that, in case the $20,000 should be regarded as additional interest, the amount of the excess over and above the maximum statutory rate—at that time 12%—might be determined. The district judge did not state his reasons for overruling the demurrer; but it is not probable that it would have been overruled if plaintiff, at the time, had insisted upon the theory of a usurious contract. Nor is it probable that—if the demurrer had been sustained, and if plaintiff had amended his complaint so as to state a cause of action for the recovery of interest paid under

a usurious contract—defendant would not have interposed an objection either by demurrer or by special defense to the effect that this new cause of action was barred by section 5 of the Act of 1902.

The theory of defendant's motion to reopen the case and to permit an amendment of the answer was that plaintiff in his brief was attempting to convert an action for damages into one for the restitution of money collected as interest in excess of the rate permitted by law.

Plaintiff, in opposing this motion, insisted that:

The period of one year within which an action might be brought to recover interest in excess of the legal rate was applicable only when the excess had been collected as such interest. That was not this case, either according to plaintiff's theory or according to the theory of defendant. The action was for the annulment of a contract independent of the contract for a loan, by virtue whereof excessive interest had not been collected but, in consideration of the loan, the signing of the new contract had been imposed upon plaintiff as a condition; that is to say, in the contract for the payment of interest owed by Mendoza there was no consideration other than the contract for a loan. This was an illicit consideration. The action was clearly within the four-year period fixed by the Civil Code for demanding the annulment of contracts. *Sosa* v. *Sosa,* 35 P.R.R. 939; *Irizarry et al.* v. *Bartolomey et al.,* 32 P.R.R. 849; *Cruz* v. *Kuinlan,* 29 P.R.R. 817; *Oliver et al.* v. *Oliver,* 23 P.R.R. 168; *Succn. of Suro* v. *Succn. of Prado,* 21 P.R.R. 227; *Succn. of Criado* v. *Martínez et al.,* 25 P.R.R. 308; *Alvarez* v. *Riera,* 20 P.R.R. 308.

*New Orleans Canal & Banking Co.* v. *Hagan, supra,* is typical of the cases now relied on by appellant. From the headnotes we take the following paragraph:

"Defendant obtained a loan from a bank prohibited by its charter from taking more than a certain rate of interest on any of its loans, on the condition of his executing a mortgage on certain property to secure its repayment, with the highest rate of interest which the charter of the bank allowed, and of his granting a second mortgage, on the same property, to secure a debt due to the bank by a third person: *Held,* that by requiring the second mortgage, the bank stipulated for something more than the payment of the highest rate of

interest allowed by its charter, that the stipulation was usurious and illegal, and that the mortgage to secure the debt due by such third person cannot be enforced."

Appellant in his brief refers to this case as identical with the case at bar and as coming from Louisiana where for more than one hundred years the law has been the same as in Puerto Rico. Appellant does not, however, refer us to any case from Louisiana, from Spain, or from any other civil law jurisdiction to show that the requirement of security for the obligation of another imposed as a condition prerequisite to the granting of a loan has ever been held "contrary to law and good morals" under a statutory provision similar to that contained in section 1227 of our Civil Code (1930 ed.), in any case where such a requirement is not tainted with usury.

If the action was one sounding in tort—as it clearly was, we think, up to the time of the trial and the motion for leave to amend the complaint in conformity with the evidence adduced at the trial—it was barred by section 1868 of the Civil Code.

If the action was—as indicated by the third assignment and the authorities cited in support thereof—an action to recover interest exacted and paid in excess of the rate permitted by law, it must be governed by the provisions of the Act of 1902, *supra,* as amended in 1903 and 1907, and was barred by section 5 of that Act.

In any event, there was no fraud, deceit, misrepresentation or concealment on the part of the bank, and we need not speculate as to the possibility of a recovery upon any theory not predicated upon the facts before us.

The judgment appealed from must be affirmed.

Mr. Justice De Jesús took no part in the decision of this case.